347 A.2d 311

**GEORGE W. KISTLER, INC.**

**v.**

**William J. O'BRIEN, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 5, 1974.

Decided Oct. 30, 1975.

476

478

Richard F. Stevens, Theodore J. Zeller, Jr., Butz, Hudders & Tallman, Allentown, for appellant.

Donald H. Lipson, Walker, Thomas, Karess, Lipson & Zieger, Allentown, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

NIX, Justice.

Appellee, George W. Kistler, Inc., commenced this action in equity seeking to enforce a restrictive covenant in a written employment contract between itself and its employee, appellant William J. O'Brien. On May 14, 1974, the Court of Common Pleas issued a Decree Nisi enjoining appellant from engaging in selling or servicing fire equipment within a 50 mile radius. Appellant's exceptions were dismissed by the court en banc and a Final Decree granting relief was entered. This appeal followed.

Appellant seeks to vacate the ruling of the court below on several grounds. One of his contentions is that the

covenant restricting appellant from engaging in a competitive business was not supported by adequate consideration. We agree with this argument and therefore reverse. Accordingly, we need not address appellant's other contentions.[1]

A review of the record reveals the following pertinent facts. Appellee, George W. Kistler, Inc., (Kistler) is a Pennsylvania corporation engaged in the sale and service of fire equipment and fire prevention services.[2] About a year prior to May of 1970, appellant, William J. O'Brien (O'Brien) was contacted by representatives of Kistler with respect to O'Brien's possible employment with their company. No decision was made at that time and the matter was left open for further discussion. Subsequently, some time in the late Winter or early Spring of 1970, Kistler again solicited O'Brien and after various negotiations relating to wages, duties, insurance benefits and other terms of employment but not including any mention of a restrictive covenant, it was agreed that O'Brien would leave his present employer and work for Kistler. O'Brien gave his then employer two weeks notice and began to work for Kistler on May 11, 1970.

On or about that same day, O'Brien questioned one of the clerks at the business with regard to his insurance benefits. Upon doing so, he was handed various forms to complete and sign, among them a document entitled Employment Contract which contained the following clause:

"In consideration of the said OWNER granting such requested employment to the said EMPLOYEE and in

1. Appellant also claimed that the covenant was not reasonably necessary for appellee's protection, and that it should not be enforced against an employee who was discharged without cause.

2. During the time of the negotiations concerning O'Brien's employment with Kistler, the business had not been incorporated and was being conducted as a sole proprietorship. The incorporation did not occur until after O'Brien had commenced working for Kistler.

further consideration of the payment of ONE ($1.00) DOLLAR lawful money of the United States, this day made by the OWNER to the EMPLOYEE, he, the EMPLOYEE, agrees with the OWNER that for a period of two (2) years after said employment is terminated for any cause whatsoever by either or both of the parties, that he will not directly or indirectly manufacture, sell, distribute, handle on his own account or by association or employment by or with any other persons whomsoever within an area of fifty (50) miles, extending from the City of Allentown, Lehigh County, Pennsylvania, any product equal in character or in any way similar to the products handled, bought, sold or serviced or to be handled, bought, sold or serviced by said OWNER."

O'Brien worked at various times in the capacity of Service Manager and Branch Manager for Kistler until November 16, 1973, when he was discharged for reasons that are disputed.

Upon his departure from Kistler, O'Brien went into business for himself servicing hand portable fire extinguishers. He solicited business from concerns located in large buildings and also did service work by subcontract for distributors of hand portable fire extinguishers. This activity was to some extent in competition with the activities of his former employer.

■ It is axiomatic in our law that in order for a covenant in restraint of trade to be enforceable the covenant must 1) relate to (be ancillary to) a contract for the sale of the good will of a business or to a contract of employment, 2) be supported by adequate consideration, and 3) be reasonably limited in both time and territory. *Jacobson & Company v. International Environment Corporation*, 427 Pa. 439, 235 A.2d 612 (1967); *Capital Bakers, Inc. v. Townsend*, 426 Pa. 188, 231 A.2d 292 (1967); *Barb-Lee Mobile Frame Co. v. Hoot*, 416 Pa. 222, 206 A.

2d 59 (1965); *Morgan's Home Equipment Corp. v. Martucci*, 390 Pa. 618, 136 A.2d 838 (1957).

Appellant asserts that the covenant is unenforceable because it lacks consideration. It is his position that the negotiations prior to May 11th constituted a complete and binding oral contract for which the consideration was the employment itself. Thus he argues that the employment as consideration was not available to support the subsequent written restrictive covenant. Moreover, he contends that the entering into an agreement containing a restrictive covenant was not a factor considered in arriving at the oral agreement of employment. It was not until O'Brien had commenced work and inquired about his Blue Cross benefit forms that he was requested by a clerk to sign the "Employment Contract" supposedly in accordance with the general practice of the firm. It is particularly significant that Kistler, who was then operating a sole proprietorship and personally participated in the final negotiations, never discussed this requirement.

Thus we must first determine at what point a final and binding employment contract was executed before determining what, if any, consideration passed for the signing of the covenant.

The Chancellor, in reviewing the evidence, rejected appellant's claim that an oral contract existed and found that the written contract was the sole agreement of employment between the parties. Based upon this premise he concluded that the employment itself was the consideration for the covenant. While the Chancellor's findings, approved by the court en banc, have the force and effect of a jury's verdict, they must also be supported by adequate evidence in order that they be affirmed on appeal. *Jacobson & Company v. International Environment Corporation, supra* 427 Pa. at 445, 235 A.2d at 616. Our reading of the record, and especially the testi-

mony of appellee, Kistler, forces us to conclude that the Chancellor's finding was contrary to the evidence and that a final and binding oral contract of employment which did not contain a restrictive covenant did exist prior to the date the written contract was signed.

At the hearing appellee, Kistler, testified as follows:

"Q   And as a result of those meetings I take it Mr. O'Brien decided to come work for Kistler Company?

A   That's right.

Q   During those meetings, did you discuss what his duties would be?

A   Yes.

Q   Did you discuss his amount of pay?

A   Yes.

Q   You discussed his insurance benefits and the rest of it?

A   I presume.

Q   Blue Cross, Blue Shield.   You knew that he had to let his then present employer, Alpo, let them know, give them notice if he was going to leave them?

A   I believe it.   I can't recall specifically.

Q   Would you agree that you were probably aware of that?

A   If it were my choice I would have suggested he give them two weeks because I wouldn't want someone to leave and walk out the door the same way.

Q   So at some period of time two weeks before he started work physically on the job, you were aware that Mr. Kistler, or that Mr. O'Brien was coming to work for the Kistler Company?

A   I imagine, yes.

Q   That the terms of the relationship had been agreed upon;   right?

A   Yes.

Q  And that you knew that he had then, after coming to that agreement with you, notified his then employer that he was quitting that work with the Alpo Company?

A  Did you say did we notify them?

Q  You realized that he would then have to notify Alpo that he had come to an arrangement with you and that he was leaving them?

A  Yes.

Q  Now at the time that you made those arrangements with Mr. O'Brien, and prior to his notifying his then employer, Alpo, that he was leaving their employ and coming with you, did you have Mr. O'Brien sign any restrictive covenant that was a condition of his employment with the Kistler Company?

A  What's the time of this?  You are saying prior to his leaving Alpo?

Q  And at the time that you made the arrangements with Mr. O'Brien for his employment with the Kistler Company, which you have now testified was at least two and maybe three to four weeks prior to his actual physical arrival on the scene, did you have Mr. O'Brien sign any alleged restrictive covenant with respect to the Kistler Company?

A  I can't think if it was signed two weeks or greater.

Q  So the answer to that is no; correct?

A  No."

Under the law of this Commonwealth it has been held that even where a later formal document is contemplated, parties may bind themselves contractually prior to the execution of the written document through mutual manifestations of assent.  Restatement of Contracts § 26 (1932); *Hatalowich v. Redevelopment Authority of Monessen*, 454 Pa. 481, 486, 312 A.2d 22 (1973); *Field v. Golden Triangle Broadcasting Inc.*, 451 Pa. 410, 418, 305 A.2d 689 (1973).  Thus evidence of mutual assent to em-

ploy and be employed which contains all the elements of a contract may be construed as a binding contract of employment though not reduced to writing. Under this test, it is clear that the testimony recited above requires a finding of the existence of an oral contract of employment at least two weeks prior to the written contract. Not only was it agreed that O'Brien would cease working for his present employer and begin working for Kistler, but all aspects of the employment relationship such as wages, duties and benefits were also agreed upon. Kistler's testimony admits mutual assent regarding the employment. Moreover, there was no evidence that the parties understood that O'Brien "was not to become a regular employee until he signed the restrictive covenant, and was not to receive any commissions . . . or other confidential information prior to that time." *National Chemsearch Corporation of New York, Inc. v. Bogatin,* 233 F.Supp. 802 (1964). Indeed the record establishes that both parties understood that O'Brien was to leave his then employment and become a regular employee of Kistler without any promise not to engage in a competitive enterprise.[3]

Having concluded that a valid oral contract of employment, without a covenant to compete, existed prior to the written contract of employment, we cannot accept the Chancellor's view that the employment itself constituted the consideration for the covenant. In our judgment, such consideration would clearly be past consideration.

While a restrictive covenant, in order to be valid need not appear in the initial contract, if it is agreed upon at some later time it must be supported by new consideration. See *Maintenance Specialties Inc. v. Gottus,* 455 Pa. 327, 331, 314 A.2d 279, 281 (1974); *Jacobson & Company v. International Environment Corpo-*

3. This evidence also raises a serious question as to the employer's need for the covenant. However, as stated in fn. 1, infra, we need not reach that question here.

*ration, supra.* As stated by the Supreme Court of North Carolina:

". . . when the relationship of employer and employee is already established without a restrictive covenant, any agreement thereafter not to compete must be in the nature of a new contract based upon a new consideration." *James C. Greene v. Kelley*, 261 N.C. 166, 168, 134 S.E.2d 166, 167 (1964).

Furthermore, we have stated that continuation of the employment relationship at the time the written contract was signed was not sufficient consideration for the covenant despite the fact that the employment relationship was terminable at the will of either party. See particularly, *Maintenance Specialties Inc. v. Gottus, supra.*[4] (Concurring Opinion, Jones, C. J., joined by Eagen, Pomeroy, Nix, JJ.). Thus the covenant which is the basis of this action is not enforceable for lack of consideration and the decree of the court below must be reversed.[5]

Decree reversed. Costs on appellee.

ROBERTS, J., filed a concurring opinion in which JONES, C. J., joins.

EAGEN, O'BRIEN and MANDERINO, JJ., concur in the result.

4. We recognize that there is a difference of opinion on this subject throughout this country. There are some jurisdictions that hold that where the employment is at will, a subsequent agreement containing a covenant not to compete will be upheld where the employment is continued in reliance upon the covenant not to compete. See 1A Corbin on Contracts, § 170 (Supp.1971). On the other hand, other courts have gone further than this jurisdiction and held that a contract at will will never support a covenant not to compete. *Associated Dairies, Inc. v. Ray Moss Farms*, 205 Tenn. 268, 326 S.W.2d 458 (Sup.Ct. of Tenn.1959).

5. The seal and $1.00 nominal consideration for the covenant recited in the clause are insufficient to support equitable enforcement of a restrictive covenant which is not favored in our law. See generally *Maintenance Specialties Inc. v. Gottus*, 455 Pa. 327, 314 A.2d 279 (1974) (Concurring Opinion, Jones, C. J.). See also, *Gompers v. Rochester*, 56 Pa. 194 (1867) and 1A Corbin on Contracts, § 252 (1963).

ROBERTS, Justice (concurring).

While I agree that the covenant in this case is not specifically enforcible, I cannot agree that the case can usefully be analyzed in terms of "consideration." It is true that our cases have sometimes used that language, but it has been explicitly recognized that the question whether a restrictive covenant is "supported by adequate consideration" turns on nothing more than whether it was ancillary to a sale of a business or the taking of employment. Thus it is simply confusing for us to continue to treat these questions as if they were distinct "requirements" for enforcement of a covenant not to compete.

The pertinent analysis was well stated by a unanimous Court in *Morgan's Home Equipment Corp. v. Martucci,* 390 Pa. 618, 628–29, 136 A.2d 838, 844–45 (1957):

> "We have held that employment contracts containing general covenants by an employe not to compete after the termination of his employment are prima facie enforcible if they are reasonably limited as to duration of time and geographical extent. *Seligman & Latz v. Vernillo,* 1955, 382 Pa. 161, 114 A.2d 672; *Plunkett Chemical Co. v. Reeve,* 1953, 373 Pa. 513, 95 A.2d 925, 43 A.L.R.2d 91. General covenants are reasonably limited if they are 'within such territory and during such time as may be reasonably necessary for the protection of the employer * * * without imposing undue hardship on the employee * * *' Restatement, Contracts, § 516(f) (1932).

> "The defendants urge that there is yet another requirement in Pennsylvania for the validity of general covenants not to compete. They rely upon the case of *Cleaver v. Lanhart,* 1897, 182 Pa. 285, 37 A. 811 for the proposition that such covenants are not enforcible unless they are supported by a real and valuable consideration, and contend that real consideration is lacking in the present case.

"In the *Cleaver* case a contract for the sale of creameries was entered into and fully performed. Subsequently, a second agreement was made under seal in which the seller agreed not to compete with the purchaser within a radius of five miles from the site of the creameries for a period of three years from the date of the contract. The contract recited the purchase of the creameries as being the consideration for the agreement. This Court held that when the second agreement was made, the contract of sale had been completely executed, and that there was nothing from this first agreement which could operate as a consideration for the second, and hence, the agreement was unenforcible despite the presence of the seal.

"While the opinion in the *Cleaver* case was couched in terms of consideration, it is apparent that the Court was referring to the fact that the general covenant not to compete was not ancillary to any principal transaction. It has long been the rule at common law, that contracts in restraint of trade made independently of a sale of a business or contract of employment are void as against public policy regardless of the valuableness of the consideration exchanged therein. *United States v. Addyston Pipe & Steel Co.*, 6 Cir., 1898, 85 F. 271, 281–282 affirmed, 1899, 175 U.S. 211, 20 S.Ct. 96, 44 L.Ed. 136; *Mitchel v. Reynolds*, 1 P.Wms. 181 (K.B. 1711) ; Restatement, Contracts, § 515(e) (1932).

"Since in the case at bar the allegedly lacking consideration for the covenants was the employment relationship itself, we must inspect the instant agreement to see whether in fact it was related to the taking of employment." (footnotes omitted)

The reasons stated by the majority for concluding that the covenant in this case was not supported by "consideration" persuade me that it was not in fact ancillary to

the contract of the employment, which was formed prior to the extraction of the covenant from appellant. For that reason it is unenforcible and the decree must be reversed.

JONES, C. J., joins in this concurring opinion.