**GAGLIARDI BROS., INC.**

v.

**Dan J. CAPUTO.**

**Civ. A. No. 81–4467.**

United States District Court,
E. D. Pennsylvania.

Feb. 12, 1982.

Christopher Walters, Philadelphia, Pa., for plaintiff.

Dennis R. Suplee, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

This is a diversity jurisdiction action for a preliminary and permanent injunction seeking enforcement of a restrictive employment covenant in a written employment contract. For the reasons which follow, we decline to enforce the employment restriction, and accordingly deny injunctive relief.

Plaintiff, Gagliardi Bros. Inc. (Gagliardi), a Pennsylvania corporation with its principal place of business in Pennsylvania, is in the business of processing and marketing portion controlled meat products, including but not limited to a sliced sandwich steak marketed under the trade-name Steak-umm, for sale to retail, institutional, and restaurant outlets. Gagliardi was a family owned business until February, 1980, when it was sold to a subsidiary of H. J. Heinz Company (Heinz). Eugene Gagliardi, Sr., the founder of the business, remains active in its affairs, and his sons Nick and Ralph are Vice Presidents. The current President and Chief Executive Officer is Richard A. Blott (Blott), a Heinz manager.

Defendant, Dan J. Caputo (Caputo), is a 53 year old individual residing in Delaware and was employed as a controller by Gagliardi from September 1972 until his termination on July 7, 1981. As its controller Caputo was one of Gagliardi's key employees, and attended all Board of Directors (pre-1980) and Management Board (1980 to 1981) meetings. As a result of his responsibilities at Gagliardi, Caputo became familiar with Steak-umm and its beef formula and fat content, information also obtainable by means of chemical analysis. He knew also that Gagliardi had spent hundreds of thousands of dollars developing modifications and improvements to Steak-umm, and to develop a new sophisticated steak slicing machine and an improved, innovative packaging. These developments are trade secrets of competitive value which Gagliardi has a financial interest in keeping confidential. Caputo also knew of valuable, confidential marketing research studies conducted on behalf of Gagliardi with regard to consumer rating of sandwich steak characteristics. At no time did Caputo deal with Gagliardi customers.

When hired by Gagliardi in 1972, Caputo did not execute any employment contract. In November 1974, following rejection of its patent application for Steak-umm, Gagliardi required Caputo, as well as several other employees, to sign such contracts. Caputo thus executed a two-page document entitled "Reappointment as Comptroller and Raise in Salary", together with a written Addendum. If he had not, his employment would have been terminated. Neither Caputo's job title nor duties changed at that time. Caputo did receive a $50.00 per week, $2,600.00 annual increase in salary at approximately the time he executed the contract. Similar increases were paid him in May, 1974, May, 1975, and October, 1975. Furthermore, in pertinent part, the contract provided as follows:

> You further agree that in the event of termination of your employment, with or without cause, you shall not, for a period of one year after termination of said employment, either directly or indirectly, enter into the portion controlled meat business, nor will you enter into the employ of anyone who is engaged in a similar business within one hundred miles of West Chester, Pennsylvania.

> .     .     .     .     .

> It is agreed that any breach of this agreement by the Employee shall entitle the Corporation...to apply to any court of competent jurisdiction to enjoin any violation of this agreement.

### Addendum

> Except for discharges for cause, either party may terminate this agreement upon 30 days written notice. If you are terminated without cause, you will receive one week's severance pay for every year you have been with the Company to a maximum of four weeks.

The 100 mile radius area surrounding West Chester, Pennsylvania was at that time the marketing area for Steak-umm. Prior to execution of the contract, neither

Caputo nor other Gagliardi employees had any right to advance notice of termination or severance pay, but it was Gagliardi's policy to treat terminated employees fairly and pay two or more weeks severance pay, depending on the circumstances.

Caputo was informed on July 7, 1981, by Blott, the Gagliardi President, that his employment would be terminated. Prior approval of the Board of Directors was not obtained. Caputo was fired because of Gagliardi's determination that he was unable to keep up with their new organization and because he was not that important in that new structure. At the July 7, 1981 meeting with Blott, Caputo signed a letter, dated June 29, 1981, which provided, in pertinent part, that he would continue to be employed by Gagliardi on a full-time basis until September 25, 1981, at full salary and benefits, and would be assigned to participate on a full-time basis to assist his personal career continuation through the services of Hay Career Consultants; that the employment contract would be strictly adhered to; and that the four weeks severance pay would not be paid because of the compensation to be provided as outlined in the letter. Accordingly, Caputo was paid his full salary and benefits through September 25, 1981. In addition, he received lump sum payments representing his previously awarded Merit Incentive bonus entitlement, and his Profit Sharing Plan interest. Caputo also received at Gagliardi's expense, the services of Hay Career Consultants.

From July through September, 1981 Caputo sent approximately 150 resumes to prospective employers, answered several advertisements and contacted several placement services. He received no offers of employment. In the year prior to his termination, Caputo received three unsolicited offers of employment, each of which would have required relocation to other areas of the country. Neither Caputo nor his family want to move out of the area. Together with his wife, Caputo runs an independent accounting business in Wilmington, Delaware, incorporated as "Pat and Dan's Accounting Service."

On October 6, 1981, Caputo began work with Devault Packing Company, Inc., (Devault), in Devault, Pennsylvania, within 25 miles of West Chester, Pennsylvania, for a salary of $28,500. per year. Devault is in the business of processing and marketing portion controlled meats, and produces a sliced sandwich steak product similar to Steak-umm. Devault's 1980 revenue from the sale of sandwich steak was approximately $5,000,000.00, which represents about 10% of its revenue. Thus, it is a competitor of Gagliardi. At least one dozen other companies produce and market a similar steak product.

Gagliardi's sale of Steak-umm in 1980 was approximately $80 million, and its marketing area is not restricted to a 100 mile radius surrounding West Chester, Pennsylvania.

Since approximately 1977, no Gagliardi employees have been required to sign employment contracts such as that signed by Caputo. Gagliardi President, Mr. Blott, Caputo's successor at Gagliardi, Richard Durham, and other management employees hired since the acquisition by Heinz, have not entered into contracts with covenants not to compete.

In the recent case of *Minnesota Mining and Manufacturing v. Prosceno*, slip op. at 6, C.A. No. 81–3550 (E.D.Pa., January 14, 1982), Judge McGlynn succinctly summarized the requirements, in Pennsylvania, for a valid restrictive covenant:

> (1) the covenant must relate to either a contract for sale of goodwill or other subject property or to a contract of employment (ancillary to an employment contract); (2) the covenant must be supported by adequate consideration; (3) the covenant must be reasonably limited in time and geographic territory and (4) the covenant must be necessary to protect the employer. *George W. Kistler, Inc. v. O'Brien*, 464 Pa. 475, 347 A.2d 311 (1975); *Maintenance Specialties, Inc. v. Gottus*, 455 Pa. 327, 314 A.2d 279 (1974); *Jacobson & Co. v. International Environment Corp.*, 427 Pa. 439, 235 A.2d 612 (1967); *Morgan's Home Equipment Corp. v. Martucci*, 390 Pa. 618, 136 A.2d 838 (1957).

On the surface, the restrictive covenant sought to be enforced against Caputo appears to be ancillary to the employment contract signed by him, as the covenant purports to be a part of that contract. A closer examination shows no such relationship. The Pennsylvania Supreme Court has ruled that "[a]lthough the covenant not to compete must be ancillary to a contract of employment, it need not necessarily be executed simultaneously with the *initial* taking of employment." *Maintenance Specialties, Inc. v. Gottus*, 455 Pa. at 329–30, 314 A.2d at 282 (Jones, C. J., concurring, joined by Eagen, J., Pomeroy, J. and Nix, J.); *Jacobson and Co. v. International Environment Corp.*, 427 Pa. at 449–50, 235 A.2d at 618–19. Furthermore,

> "[w]here a covenant not to compete is executed subsequent to the initial employment . . . its performance will not be enforced unless the employee who restricts himself receives a corresponding benefit or change in status. Without such a change of status, the new contract will not qualify as a 'taking of employment,' nor will there be adequate consideration to support the additional covenant of the employee."

*Maintenance Specialties, Inc. v. Gottus*, 455 Pa. at 332, 314 A.2d at 282. In the case *sub judice*, there was no change in Caputo's employment status upon signing the contract. His title and duties remained the same. In addition, the evidence shows that the increase in salary received by Caputo was not a corresponding benefit, but was merely one of a series of increases received by him approximately every six months during the 1974–1975 period.

Moreover, contrary to the argument of Gagliardi, the covenant lacks adequate consideration. The Pennsylvania Supreme Court has stated that:

> "[w]hile a restrictive covenant, in order to be valid need not appear in the initial contract, if it is agreed upon at some later time it must be supported by new consideration."

*George W. Kistler, Inc. v. O'Brien*, 464 Pa. 475, 347 A.2d 311, 316 (1975); *Maintenance Specialties, Inc. v. Gottus*, 455 Pa. at 331, 314 A.2d at 281; *Jacobson and Company v. International Environment Corporation*, 427 Pa. at 449–50, 235 A.2d at 617–18. Furthermore, the Court has held that "continuation of the employment relationship at the time the written contract was signed . . . [is] not sufficient consideration for the covenant despite the fact that the employment relationship was terminable at the will of either party." *George W. Kistler, Inc. v. O'Brien*, 464 Pa. at 485, 347 A.2d at 316. Thus, the law "requires the presence of valuable consideration to support a covenant not to compete." *Maintenance Specialties, Inc. v. Gottus*, 455 Pa. at 333, 314 A.2d at 282.

> "When the restrictive covenant is contained in the initial contract of employment, consideration for the restrictive covenant is the job itself. When the restrictive covenant is added to an existing employment relationship, however, it is only enforceable when the employee who restricts himself receives a corresponding benefit or change in status. An employee's continued employment is not sufficient consideration for a covenant not to compete which the employee signed after the inception of his employment, where the employer makes no promise of continued employment for a definite term."

*Id.*, 314 A.2d at 282–283.

In accordance with these precepts, it is apparent that the covenant is not enforceable for lack of consideration. Caputo already was employed by Gagliardi at the time the contract was signed and covenant agreed to, and as already noted he had received no benefit or change in status. His employment was continued, but without any promise of a definite term and his salary increase cannot even be said to have been ancillary to the contract and covenant, let alone to have supplied adequate consideration for so restrictive a covenant. The 30 day notice and severance pay provisions likewise fail to supply sufficient consideration to support the restrictive covenant. An examination of the contract addendum containing these provisions reveals that

they are illusory, for, as noted in *Maintenance Specialties, Inc. v. Gottus*, 314 A.2d at 283, n. 6, with regard to a similar notice provision, the contract addendum provides that they are not applicable when "discharges are for cause."

■ This Court also finds the covenant unenforceable as not reasonably limited in time and geographic territory, nor necessary for the protection of the employer, Gagliardi. These requirements must be met. *Sidco Paper Company v. Aaron*, 465 Pa. 586, 351 A.2d 250, 254–57 (1976); *Bettinger v. Carl Berke Associates, Inc.*, 455 Pa. 100, 314 A.2d 296, 298, (1974); *Jacobson and Co., Inc. v. International Environment Corp.*, 427 Pa. at 452, 235 A.2d at 619–20.

■ The one year restriction on employment although perhaps reasonable in the sense of not being excessively long, nevertheless bears no reasonable relationship to the protection of Gagliardi. For one, there is no evidence to show that Gagliardi would in any way be harmed by permitting Caputo to work for Devault before a year has passed. Indeed, there has been no showing that there is any information which Caputo may possess and which might be revealed to a new employer to the detriment of Gagliardi. Gagliardi has not established that Caputo has any technical knowledge regarding the new slicing machine technology, innovative packaging, or marketing data, from which Devault, or some other competitor of Gagliardi, could develop and produce a new slicing machine similar to that contemplated by Gagliardi, or institute use of the new innovative packaging planned by Gagliardi before Gagliardi could itself make that packaging available, or devise new marketing strategy based on the results of the market research conducted on behalf of Gagliardi. In addition, Gagliardi has not established that Devault could change its beef formula based on any information it might receive from Caputo which it could not otherwise discover through, for example, chemical tests.

Caputo's expertise is as a controller, not as an engineer, designer, marketing analyst, or chemist. His general knowledge about Gagliardi poses no real threat to Gagliardi, so that a time limit on his employment eligibility is unnecessary and unreasonable.

■ As for the 100 mile limit, that restriction no longer makes sense. Caputo could work for a competitor of Gagliardi beyond that limit. Since Gagliardi's marketing area is no longer confined to that 100 mile radius, as it was when the covenant was imposed, even if there is the need to protect it, a showing which we have determined has not been made, there is no reason to think that such protection could not be needed as to those other marketing areas. The conclusion we draw is that restricting Caputo's employment opportunity to the 100 miles of West Chester radius is not reasonable when the Gagliardi marketing area is no longer so restricted, regardless of what might have been the reasonableness of such a geographic limitation when the covenant was established.

Additionally, it is significant that imposition of a restrictive covenant. has not been required of employees of Gagliardi since 1977, yet its business has grown considerably since that time. Thus, neither Caputo's successor, nor even as vital an executive as Gagliardi's President, Mr. Blott, are subject to restrictive employment covenants. Unless we are to believe that only Caputo can hurt Gagliardi by working as a controller for a competitor, this evidence strongly suggests that Gagliardi, despite the initiation of this action, does not perceive any need for the imposition of ʳestrictive covenants, or else others would bᴏ subjected to agreements such as that sought to be enforced here.

■ Finally, we consider the fact that Caputo received but rejected employment offers which would have required relocation, and that he and his wife operate their own accounting service. As the above cited cases make clear, the focus of an inquiry on the issue of enforcement of a restrictive covenant is on the reasonableness of the covenant itself, and on the employer's need to enforce it, and on the ancillary agreement and consideration which support it.

The availability, or lack thereof, of alternative employment opportunities or sources of income is not a direct factor to consider. Of course, the obvious hardship of a restrictive covenant in preventing an individual from earning a livelihood, is the basis of the law's disfavor of such agreements. *See, Minnesota Mining and Manufacturing Company v. Prosceno*, slip op. at 5; *Morgan's Home Equipment Corp. v. Martucci*, 390 Pa. 618, 136 A.2d 838 (1957). This is so regardless of the particular financial circumstances of the employee against whom it is sought to be enforced.

Since we find the restrictive covenant unenforceable, there is no basis for issuance of an injunction, and judgment is entered in favor of the defendant and against the plaintiff.

The above constitutes this Court's findings of fact and conclusions of law, in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.