JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, Cary Corporation dba United Insulation Company, appeals the decision of the Cuyahoga County Common Pleas Court granting summary judgment to defendant-appellee, William Linder, on appellant's complaint for, inter alia, breach of employment agreement. For the reasons that follow, we affirm.
 {¶ 2} The record reveals that United Insulation Company ("United") hired William Linder ("Linder") as a sales representative sometime in March 1996. On June 7, 1996, three months after Linder's employment began, the parties executed an employment agreement, which contained non-compete, non-solicitation and non-disclosure covenants. The non-compete covenant precluded Linder from competing with United within a seventy-five mile radius of any its locations for a period of three years after the employment relationship terminated, while the non-solicitation covenant precluded Linder from soliciting any of United's customers. The non-disclosure covenant barred Linder from disclosing any information regarding United's business practices, including customer and pricing information, to any person or entity during the term of his employment or anytime thereafter. The parties further agreed that the agreement would be governed and construed under Pennsylvania law.
 {¶ 3} United was acquired by BSI Holdings, Inc. in 1998, which was acquired by Masco Corporation in January 2001. Cary Corporation ("Cary") is a wholly owned subsidiary of Masco. While some employees were asked to sign new employment agreements during these acquisitions, Linder was not asked to do so. According to the corporation records on file with the Secretary of State, United was "merged out of existence" in February 2001.
 {¶ 4} In May 2001, Linder left employment with Cary, the successor to United, and began working for a competing insulation business. Cary thereafter filed a six-count complaint alleging that Linder (1) breached the duty of loyalty; (2) misappropriated trade secrets; (3) breached the employment agreement; (4) raided corporate employees; (5) converted property belonging to Cary; and (6) was liable for punitive damages.[1]
Linder moved to dismiss or, alternatively, for summary judgment arguing that Cary could not enforce the employment agreement because (1) it was not a party to the agreement; (2) the agreement lacked consideration; and (3) there were no issues of fact as to the remaining claims against him. The motion was supported by references to documentary evidence in support of or in opposition to Cary's motion for preliminary injunction, which included, inter alia, excerpts from the depositions of Linder and corporate representative, David Johnson ("Johnson").
 {¶ 5} In granting Linder's motion for summary judgment, the trial court concluded that Pennsylvania exhibited a strong public policy regarding the assignment of obligations under an employment agreement, stating,
 {¶ 6} "Thus, it is the holding of this Court that under the law of Pennsylvania, a court is to look to all of the circumstances surrounding the acquisition of one business by another to determine whether the latter has succeeded to the business of the former, or whether the former survives as an entity controlled by the latter. The structure of the transaction (e.g., asset or stock sale) is but one factor to be considered. Another, and more important factor, is the circumstances of the employee's employment before and after the transaction."
 {¶ 7} The court thereafter found that Cary was the successor to United and not merely the same corporation. As reasoned by the trial court:
 {¶ 8} "[Cary] has brought this action as "Cary Corporation, d/b/a United Insulation." This, taken in context with the evidence from the Ohio Secretary of State that United was "merged out of existence" in February 2001, leads to the inescapable conclusion that United did not survive as a viable entity after the acquisition by [Cary]; thus, [Linder's] employer at the time of his resignation was not United, but was in fact [Cary]. Just as the court in Siemens[2]
refused to recognize a name change as the sine qua non for determining the status of an employee's employer, so too does this Court refuse to recognize that no name change is conclusive of determining who [Linder's] employer was. Other facts which support this conclusion are: [Linder's] paychecks were issued by [Cary], not United; for purposes of workers' compensation, [Cary] was [Linder's] employer; and the control hierarchy changed when [Cary] bought United. This Court is also swayed by the fact that [Cary], when it acquired United (through BSI), required certain employees to execute new employment agreements; however, it did not require [Linder] to do so. Thus, absent an assignability provision, [Cary] cannot enforce the employment agreement against [Linder]. As no such provision exists in the agreement, [Cary's] claims against [Linder] for breach of the agreement must fail."
 {¶ 9} Finding no genuine issues of material fact on Cary's remaining claims, the trial court ultimately granted the motion and Cary now appeals, assigning two errors for our review.
 I. Summary Judgment {¶ 10} In its first assignment of error, Cary contends that genuine issues of material fact remain on each of its claims against Linder.[3]
 {¶ 11} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. Zivichv. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-370, citingHorton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, paragraph three of the syllabus; see, also, Civ.R. 56(C). With this standard in mind, we will address each of Cary's issues under this assigned error.
 A. Breach of Employment Agreement {¶ 12} Cary contends that the trial court erred in finding the employment agreement unenforceable because Cary was not a party to the agreement. In particular, it claims that it is the successor to United by merger and that, because Linder's duties did not change when it acquired United, Linder remains bound by the agreement. Linder, on the other hand, maintains that United was "merged out of existence" and absent Linder's consent to assign that agreement to Cary, the agreement is unenforceable. Alternatively, Linder claims that the agreement is unenforceable because it lacked adequate consideration in that it was executed three months after he began his employment with United.
 {¶ 13} Restrictive covenants are enforceable under Pennsylvania law if the covenant is (1) ancillary to a contract for employment or a contract for the sale of a business; (2) supported by adequate consideration; (3) reasonably limited in time and geographic scope; and (4) reasonably necessary to protect the employer. Gagliardi Bros., Inc.v. Caputo (E.D.Pa. 1982), 538 F. Supp. 525, 527; see, also, All-Pak,Inc. v. Johnston (Pa.Super. 1997), 694 A.2d 347, 350. They are, nonetheless, unassignable absent an express agreement to that effect.[4]
Id. at 351.
 {¶ 14} "Strong policy considerations underlie the conclusion that restrictive covenants are not assignable. Given that restrictive covenants have been held to impose a restraint on an employee's right to earn a livelihood, they should be construed narrowly; and, absent an explicit assignability provision, courts should be hesitant to read one into the contract. Moreover, the employer, as drafter of the employment contract, is already in the best position to include an assignment clause within the terms of the employment contract. Similarly, a successor employer is free to negotiate new employment contracts with the employees, as the record reveals new All-Pak did with several employees, or secure the employee's consent to have the prior employment contract remain in effect." [Citations omitted]. All-Pak, Inc., 694 A.2d at 351; cf. Hess v. Gebhard Co., Inc. (Pa.Super. 2001), 769 A.2d 1186.[5]
 {¶ 15} Notwithstanding, Cary relies on Siemens Medical SolutionsHealth Serv. Corp. v. Carmelengo (E.D.Pa. 2001), 167 F. Supp.2d 752, for the proposition that a mere transfer of shareholder rights is insufficient to release a former employee from the obligations imposed by a restrictive covenant contained in an employment agreement. In that case, a former employee argued that a similar restrictive covenant was unenforceable because Siemens, the successor by stock acquisition to Shared Medical Systems ("SMS"), was not a party to the employment agreement containing the restrictive covenant. Acknowledging that Pennsylvania law prohibits the assignment of restrictive covenants to successor employers absent an express agreement to the contrary, seeAll-Pak, Inc., 694 A.2d at 351-352, the Siemens court nonetheless found that a "change in stock ownership is merely a transfer of shareholder rights which does not, in and of itself, normally affect the existence of the corporate entity." Siemens, 167 F. Supp.2d at 758. Concluding, therefore, that SMS and Siemens are merely two different names for the same corporate entity, the Siemens court found the restrictive covenant enforceable. Analogizing to the instant case, Cary argues that since its acquisition of United was by stock purchase rather than an asset purchase, Siemens controls and the agreement is enforceable.
 {¶ 16} Countering, Linder argues that it is the relationship between the successor corporation and the employee, not the merging corporations, that should govern whether an earlier existing employment agreement remains valid. Linder relies on Joyner Sports Medicine Inst.,Inc. v. Stejbach (1999), 45 Pa.DC.4th 242, which in turn relied uponAll-Pak. The Joyner court stated: "We believe that All-Pak is controlling in the case at bar, True, as Joyner strenuously argues, All-Pak involved an asset purchase agreement as opposed to a stock purchase. However, we view this as a distinction without a difference. The point of focus should not be on the relationship between the old employer and the new employer, but rather as between the employee and the new employer. The strong policy considerations referred to in All-Pak recognize that the employment relationship is a personal matter between an employee and the company who hired him and for whom he chose to work. Unless an employee explicitly agreed to an assignability provision, an employer may not treat him as some chattel to be conveyed, like a filing cabinet, to a successor firm." Id.
 {¶ 17} The issue of assignability aside, we find the restrictive covenants at issue otherwise unenforceable because they were not ancillary to the employment relationship. The mere continuation of the employment relationship at the time the agreement is signed is insufficient consideration for a restrictive covenant. See George W.Kistler, Inc. v. O'Brien (1975), 464 Pa. 475, 485, 347 A.2d 311, 316. This does not mean that such a covenant must be executed at the time of initial employment in order to be considered sufficiently ancillary.Maintenance Specialties, Inc. v. Gottus (1974), 455 Pa. 327, 329-330,314 A.2d 279, 282.
 {¶ 18} "When the restrictive covenant is contained in the initial contract of employment, consideration for the restrictive covenant is the job itself. When the restrictive covenant is added to an existing employment relationship, however, it is only enforceable when the employee who restricts himself receives a corresponding benefit or change in status. An employee's continued employment is not sufficient consideration for a covenant not to compete[,] which the employee signed after the inception of his employment, where the employer makes no promise of continued employment for a definite term." Id.
 {¶ 19} Cary maintains that the employment agreement was sufficiently ancillary to the inception of employment because it was executed shortly after Linder began his employment with United. While Cary cites to us cases where there was a delay in the execution of an agreement containing restrictive covenants after employment had already began, in none of those cases was the period of delay as great as the instant case. See Natl. Business Services, Inc. v. Wright (E.D.Pa. 1998), 2 F. Supp.2d 701, 707 (10 days); Beneficial Fin. v. Becker (Pa. 1966), 422 Pa. 531, 535, 222 A.2d 873, 876 (2 days). Moreover, there appeared to be evidence that the parties in the cases relied upon by Cary had discussed the respective restrictive covenants prior to the acceptance of employment, a fact not present in this case. We are unwilling to find such cases analogous to the instant case where the delay was almost three months.
 {¶ 20} Alternatively, Cary asserts that sufficient consideration supported the restrictive covenants at issue because Linder received increased benefits in the form of additional car allowance, life insurance, disability insurance and the ability to participate in a 401(k) plan. A review of Johnson's testimony, however, demonstrates that Linder received these benefits at the time he began employment with United, not at the time the agreement was signed some three months later.
 {¶ 21} Consequently, while we may agree with the trial court that the employment agreement is unenforceable based on public policy reasons, the agreement is likewise unenforceable because it was not supported by sufficient consideration under Pennsylvania law. There being no genuine issue of material fact remaining as to the enforceability of the employment contract, the trial court did not err in granting Linder's motion for summary judgment on this issue.
 B. Misappropriation of Trade Secrets {¶ 22} Cary asserts that Linder misappropriated trade secret information such as its pricing structure, profit margins, costs and customer information.
 {¶ 23} R.C. Chapter 1333 governs trade practices and R.C. 1333.61
et seq., in particular, provides protection for trade secrets. As defined, a "trade secret" includes, inter alia, technical information, processes, procedures, formulas, or any business information or plans, listing of names, addresses, or telephone numbers that are economically valuable to an employer and are not readily ascertainable by others who would likewise benefit economically from such information. See R.C.1333.61(D). A trade secret is misappropriated when it is acquired improperly by one who knew or should have known that such information was protected or discloses it without the consent of the holder of the secret. R.C. 1333.61(B). An entity claiming trade secret status bears the burden of identifying and demonstrating that the information is protected under this statute and, furthermore, must demonstrate that it has actively sought to maintain that information's secrecy. See Fred SiegelCo., L.P.A. v. Arter Hadden (1999), 85 Ohio St.3d 171, 181.
 {¶ 24} "Often cited as explaining the nature of a trade secret is the opinion of Justice Oliver Wendell Holmes in E.I. DuPont de NemoursPowder Co. v. Masland (1917), 244 U.S. 100, wherein it was observed that trade secret laws are not those of property but the equitable principles of good faith applicable to confidential relationships. The employer who has discovered or developed trade secrets is protected against unauthorized disclosure or use, not because he has a property interest in the trade secrets but because the trade secrets were made known to the employee in a confidential relationship." Valco Cincinnati, Inc. v. N D Machining Serv., Inc. (1986), 24 Ohio St.3d 41, 45.
 {¶ 25} In this case, the information Cary contends is protected as a trade secret fails to satisfy the statutory definition. While it is true that business information and customer lists may be considered a trade secret, this is only true if that same information derives its economic benefit from that which is not readily ascertainable by proper means. See R.C. 1333.61(D)(1); see, also, State ex rel. Besser v. OhioState Univ. (2000), 89 Ohio St.3d 396, 402. That is not the case here.
 {¶ 26} None of the information Cary contends is protected under this statute meets the definition of trade secret because the very same information is properly readily ascertainable. Johnson testified during deposition that Cary shares its prices with its customers and that Linder could have merely asked one of the customers for Cary's price lists without much difficulty. Cary further concedes that its customers are not difficult to identify because such information is readily accessible without resort to its customer lists. Moreover, while Johnson testified that the profit margin in the insulation industry is common knowledge, he also testified that Cary does not claim that Linder misappropriated any information regarding its "markup" cost. Indeed, Johnson stated that, based on his observations, Linder does not even know how to calculate profit. That being the case, we are hard pressed to see how Linder could have misappropriated information that Cary does not think he ever possessed.
 {¶ 27} Cary relies on this court's decision in Giovinazzi v.Chapman (Aug. 26, 1982), Cuyahoga App. No. 44241, 1982 Ohio App. Lexis 13516, which stated that "even in the absence of a restrictive covenant not to compete, employees who use confidential information or trade secrets, such as the customer information which was contained in [the former employer's] company records, may not solicit business from the employer's former customers after leaving the service of the employer." Id. at 11. The defendant-former employee in Giovinazzi worked for a coffee supply service that sold coffee equipment, coffee and condiments to coffee shops, warehouse and offices. The defendant alone was responsible for servicing customer accounts and, while so employed, made a selective list of those customers that the defendant eventually solicited when she began her own competing business.
 {¶ 28} Unlike the instant case, however, the customer lists inGiovinazzi were not readily ascertainable. There was no concession on the part of the employer in that case that its customers' identities were not confidential as we have in the instant case. On the contrary, Cary concedes that its competitors know the identities of its customers. Consequently, Giovinazzi does not support Cary's argument on this issue.
 {¶ 29} Because no genuine issue of material fact exists on Cary's claim for misappropriation of trade secrets, the trial court did not err in granting Linder summary judgment on this issue.
 C. Breach of the Duty of Loyalty {¶ 30} Cary contends that the trial court erred in concluding that there was no issue of fact as to whether Linder breached a duty of loyalty. Succinctly, Cary claims that there was sufficient evidence supporting that Linder was actively engaged in preparing to compete with Cary prior to his departure.
 {¶ 31} To the extent that such a claim is actionable under Ohio law, it appears to be based on an employee's duty of good faith and loyalty owed to the employer. The duty is breached when an employee competes with his or her employer. See Berge v. Columbus Community CableAccess (1999), 136 Ohio App.3d 281, 326, citing Goal Sys. Intl. v.Klouda (Oct. 10, 1985), 10th Dist. No. 84-AP-168, 1985 Ohio App. Lexis 8799.
 {¶ 32} Assuming without deciding that such a claim is cognizable, we find that the trial court did not err in its decision on this issue. "Preparing to compete" is not equivalent to "competing." Since Cary cannot demonstrate that Linder actually competed with Cary while still employed there, there can be no breach of the duty of loyalty if, indeed, such a claim is actionable under the laws of this state.
 D. Conversion {¶ 33} Cary contends that the trial court erred in determining that there was no issue of fact on its claim for conversion. Cary argues that Linder wrongfully withheld several customer files. Conversion is "any exercise of dominion or control wrongfully exerted over personal property of another in denial of or under a claim inconsistent with his rights." Okocha v. Fehrenbacher (1995), 101 Ohio App.3d 309, 318. If the original taking was rightful and no act of dominion or control inconsistent with plaintiff's ownership had taken place, a demand and refusal are necessary. Ohio Tel. Equip. Sales, Inc. v. HadlerRealty Co. (1985), 24 Ohio App.3d 91, 93. Thus, in order to prevail on claim for conversion of property, the owner must demonstrate (1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property; and (2) that the possessor refused to deliver the property to its rightful owner. Id.
 {¶ 34} Here, Linder admitted to having the files in question and Cary does not dispute that Linder's possession of those files was initially rightful. Once a demand for their return was made, Linder returned the files at issue. Cary does not dispute that the property has been returned. Consequently, there is no genuine issue of fact precluding summary judgment on this issue.
 II. Preliminary Injunction {¶ 35} In its second assignment of error, Cary contends that the trial court erred in failing to grant its motion for preliminary injunction. Due to our disposition of Cary's first assignment of error, we need not discuss this assigned error. See App.R. 12(A)(1)(C).
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, J., AND DIANE KARPINSKI, J., CONCUR
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] Cary also sought injunctive relief, which the court denied.
[2] Siemens Medical Solutions Health Serv. Corp. v. Carmelengo
(E.D.Pa. 2001), 167 F. Supp.2d 752, discussed infra.
[3] The trial court found that Cary did not oppose Linder's argument regarding its claim of corporate raiding and, as such, granted Linder judgment in its favor on this issue as well. Cary does not challenge this ruling on appeal.
[4] Cary argues for the first time on appeal that the agreement Linder signed effectively had an assignment provision because the agreement was not only between Linder and United but also included "any other subsidiary or related business, wherever situated, which is controlled or owned, in whole or in part, by DAVID N. HILL and which is engaged in allied activities * * *." Cary maintains that since David Hill remains a shareholder in Cary's parent company, Masco, that the agreement covers Linder's employment with Cary as well.
Cary did not raise this issue in court below and, as such, has waived this argument for purposes of appeal. Turner v. Central Local SchoolDist. (1999), 85 Ohio St.3d 95, 98-99. Nonetheless, without deciding whether this language is effective to constitute a valid assignment, we find it plausible that such a provision may not be considered sufficiently limited geographically to be enforceable since David Hill could successfully prohibit Linder from obtaining employment merely by his purchase of shares in a similar corporation that has a nationwide or worldwide presence.
[5] On October 16, 2002, the Pennsylvania Supreme Court reversed the superior court in Hess and, relying on All-Pak, Inc., found restrictive covenants non-assignable absent express consent. See Hess v. Gebhard Co., Inc. (Pa. 2002), 2002 Pa. Lexis 2181.