67 A.3d 778

**PULSE TECHNOLOGIES, INC., Appellant**

v.

**Peter NOTARO and MK Precision LLC, Appellees.**

Supreme Court of Pennsylvania.

Argued Sept. 12, 2012.

Decided May 29, 2013.

Adam Gregg Silverstein, Clair E. Wischusen, Fox Rothschild, LLP, Warrington, for Appellant.

Christopher Edward Ezold, Robert Harrison Graff, The Ezold Law Firm, P.C., Bala Cynwyd, for Appellee.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice EAKIN.

We granted allocatur to determine whether the Superior Court erred by declining to validate a restrictive covenant contained in an employment agreement, solely because the restrictive covenant was not expressly referenced in an initial offer letter which conditioned employment on the execution of the employment agreement. Upon concluding the Superior Court did not properly characterize the offer letter, we vacate and remand for further proceedings.

In 2005, Pulse Technologies, Inc. had an opening for an experienced Swiss Screw engineer (a machinist with special expertise in operating metalworking machines for the manufacture of high-precision components). Pulse hired MSK East, a national search firm specializing in recruiting technical and professional individuals for the Swiss Screw machine industry. MSK East identified Peter Notaro as a candidate for the Pulse position.

After a preliminary telephone interview, Pulse invited Notaro to its facility for a tour and an in-depth interview. On July 25, 2005, following two interviews, Joseph C. Rosato, Jr., President of Pulse, sent Notaro a two-and-one-half-page formal offer of employment letter, which contained a "summary" of Notaro's "intended position with [Pulse]." Offer Letter of Joseph C. Rosato Jr., President of Pulse, to Peter Notaro (Offer Letter), 7/25/05, at 1. The letter set forth a description of the position, responsibilities, location, base salary, benefits, effective date, and confidentiality. The letter also stated: "You will also be asked to sign our employment/confidentiality agreement. We will not be able to employ you if you fail to do so," and "[i]n addition, the first day of employment you will be required to sign an Employment Agreement with definitive terms and conditions outlining the offer terms and conditions contained herein." *Id.*, at 2, 3. The letter did not mention a restrictive covenant.

Notaro signed the letter as instructed, and sent it back to Pulse. Consistent with the offer letter, on the start date, August 15, 2005, Notaro was asked to sign an employment/confidentiality agreement, which contained a non-competition restrictive covenant. Notaro read and understood the non-competition covenant; he "did not voice any objection to his recruiter, human resources, or anyone else at Pulse." Trial Court Opinion, 11/17/10, at 6, 11. "Prior to this point, Notaro was not performing any work, nor was he receiving any benefits." *Id.*, at 6.

In January, 2010, still employed at Pulse, Notaro learned of a position available at MK Precision, LLC, a competitor of Pulse. "Prior to his offer of employment with MK Precision, Notaro informed [MK Precision] of his non-compete. Based on MK Precision's promise to indemnify Notaro from all legal fees associated with the instant litigation, Notaro accepted [MK Precision's] offer." *Id.*, at 7 (citations to record omitted). In February, 2010, Notaro resigned from Pulse. After several meetings with Pulse's human resources personnel, Notaro informed Pulse he would not take the job at MK Precision but would still resign from Pulse. In fact, Notaro accepted the

position with MK Precision as general manager of Swiss Screw products, the same work he performed at Pulse. This litigation followed, in which Pulse sought a preliminary injunction enjoining MK Precision from employing Notaro.

The trial court granted Pulse's injunction. The Superior Court vacated the injunction and remanded for further proceedings. Applying the standard of review for preliminary injunctions, the Superior Court noted the trial court order lacked a bond requirement and addressed only four of the six prerequisites for the issuance of a preliminary injunction, as set forth in *Summit Towne Centre, Inc., v. Shoe Show of Rocky Mount, Inc.*, 573 Pa. 637, 828 A.2d 995, 1001 (2003). The Superior Court concluded the trial court erred in granting the relief, and remanded; it gave "only a brief outline of our additional reasons for reversal, reserving further discussion until appeal, should there be one, from final judgment or decree in law or equity." *Pulse Technologies, Inc. v. Notaro*, No. 2424 EDA 2010, unpublished memorandum at 12, 30 A.3d 545 (Pa.Super. filed May 23, 2011). Regarding the additional reasons for reversal, the Superior Court stated:

> Most obviously, the restrictive covenant Pulse sought to impose on Notaro after he had commenced employment is precluded by the express limitation in the formal offer letter that the employment agreement to be signed on the first day of employment would only "outline[ ] the offer terms and conditions *contained herein.*"

*Id.* (emphasis in original).

We disagree. First, the Superior Court's paraphrasing of the relevant language is misleading. The actual clause reads: "In addition, the first day of employment you will be required to sign an Employment Agreement with definitive terms and conditions outlining the offer terms and conditions contained herein." Offer Letter, at 3. The Superior Court added the word "only," and disregarded the statement that the employment agreement would contain the "definitive terms and conditions" of the agreement.

Second, a review of the offer letter reveals it was part of the hiring process, and was not the employment contract. In *George W. Kistler, Inc. v. O'Brien*, 464 Pa. 475, 347 A.2d 311 (1975), this Court held:

> Under the law of this Commonwealth it has been held that even where a later formal document is contemplated, parties may bind themselves contractually prior to the execution of the written document through mutual manifestations of assent. Thus evidence of mutual assent to employ and be employed which contains all the elements of a contract may be construed as a binding contract of employment though not reduced to writing.

*Id.*, at 315 (internal citations omitted). Under this authority, it is clear the offer letter was not intended as nor sufficient to comprise the employment contract.

The offer letter specifically stated: (i) it was intended to summarize Notaro's position with Pulse ("Below is a summary of your intended position at [Pulse]. . . ." Offer Letter, at 1); (ii) Notaro was required to sign an employment/confidentiality agreement as a condition for his employment ("You will also be asked to sign our employment/confidentiality agreement. We will not be able to employ you if you fail to do so." *Id.*, at 2); and (iii) the terms and conditions contained in the Offer Letter would be outlined with definitive terms in the employment agreement ("[Y]ou will be required to sign an Employment Agreement with definitive terms and conditions outlining the offer terms and conditions contained herein." *Id.*, at 3). The clear references to future specific terms show the offer letter is not a contract, but only evidence of negotiation. *See Goldman v. McShain*, 432 Pa. 61, 247 A.2d 455, 458 (1968) (This Court "has long recognized the principle that documents[ ] having the surface appearance of contracts may be in fact evidence of mere negotiating by parties with a view toward executing a binding contract in the future. Should this be the case, of course, [such] documents cannot form the basis for recovery.")

■■■ Third, it is clear from the language of the offer letter that execution of the actual employment agreement, and hence the restrictive covenant, was ancillary to taking employment. "In Pennsylvania where a contract of employment, which is ancillary to the taking of employment, contains reasonable restrictive covenants that do not constitute illegal restraints of trade, the restrictive covenants are valid and enforceable[.]" *Beneficial Finance Co. of Lebanon v. Becker*, 422 Pa. 531, 222 A.2d 873, 875 (1966). "As long as the restrictive covenants are an auxiliary part of the taking of regular employment, and not an after-thought to impose additional restrictions on the un-suspecting employee, a contract of employment containing such covenants is supported by valid consideration, and is therefore enforceable." *Id.*, at 876 (citation omitted).

Because the restrictive covenant at issue was contained within the employment agreement, it was ancillary to Notaro's taking of employment and therefore supported by consideration. The panel apparently believed the covenant was not ancillary and thus was not enforceable because it was not supported by new, independent consideration. To the extent the Superior Court relied on *Maintenance Specialties, Inc. v. Gottus*, 455 Pa. 327, 314 A.2d 279 (1974) and *Kistler*, such reliance is misplaced.

In *Gottus*, the employee began working pursuant to an oral agreement. During the following year, the parties entered into a written agreement which included a non-compete covenant. After noting "a restrictive covenant is enforceable if supported by new consideration, *either in the form of an initial employment contract* or a change in the conditions of employment," this Court held the covenant at issue was not enforceable because the employee's status did not change beneficially when the parties reduced their agreements to writing. *Gottus*, at 281 (emphasis added). In the present matter, the covenant was not executed after commencement of employment, but simultaneously with employment. Under *Gottus*, the consideration is therefore present.

In *Kistler*, the employee reached an oral agreement with the employer, and on or about the day the employee began

working, he was given various forms to sign, including an employment agreement containing a non-compete covenant. Upon the employee leaving employment, the employer sought to enforce the covenant. The employee argued the covenant was not supported by adequate consideration. This Court noted:

> While a restrictive covenant, in order to be valid need not appear in the initial contract, if it is agreed upon at some later time it must be supported by new consideration. *See Maintenance Specialties Inc. v. Gottus,* 455 Pa. 327, 331, 314 A.2d 279, 281 (1974); [*Jacobson & Co. v. International Environment Corp.,* 427 Pa. 439, 235 A.2d 612 (1967)]. As stated by the Supreme Court of North Carolina:
>
> > " . . . when the relationship of employer and employee is already established without a restrictive covenant, any agreement thereafter not to compete must be in the nature of a new contract based upon a new consideration." *James C. Greene v. Kelley,* 261 N.C. 166, 168, 134 S.E.2d 166, 167 (1964).
>
> Furthermore, we have stated that continuation of the employment relationship at the time the written contract was signed was not sufficient consideration for the covenant despite the fact that the employment relationship was terminable at the will of either party. See particularly, *Maintenance Specialties Inc. v. Gottus, supra.* (Concurring Opinion, Jones, C.J., joined by Eagen, Pomeroy, Nix, JJ.).

*Kistler,* at 316 (footnote omitted). Applying these principles, this Court agreed with the employee and concluded "a valid oral contract of employment, without a covenant to compete, existed prior to the written contract of employment," and continued employment did not constitute consideration for the subsequent written covenant. *Id.* Specifically, this Court found the oral contract contained all elements of an employment contract, including a mutual manifestation of assent regarding employment. *Id.,* at 315–16. There being no new consideration for the additional covenant, it was held to be unenforceable.

The applicability of both *Gottus* and *Kistler* depends on the existence of a contract prior to the addition of the non-complete covenant. In this case, no such contract existed. The offer letter specifically stated Notaro had to execute the employment contract as a condition of employment; the employment agreement, not the offer letter, contained the definitive terms and conditions of employment. The letter, therefore, was not a binding employment contract.

In light of the foregoing, we conclude the Superior Court erred in finding the offer letter constituted a binding agreement. Given the limited scope of review granted in the instant matter, we do not address any of the Superior Court's other conclusions, and we express no opinion as to their propriety.

Order vacated; case remanded to the Superior Court for further proceedings. Jurisdiction relinquished.

Former Justice Orie Melvin did not participate in the consideration or decision of this case.

Chief Justice CASTILLE and Justices BAER and McCAFFERY join the opinion.

Justice SAYLOR files a concurring opinion.

Justice TODD files a concurring opinion.

## *CONCURRING OPINION*

Justice SAYLOR.

Similar to the expression of Madame Justice Todd, I have reservations about treating the letter agreement executed by Appellant and Appellee Peter Notaro as something less than a contract. Indeed, if Appellant had attempted to repudiate its commitment and deny employment to Notaro without good cause, the letter agreement would seem to me to be sufficient to give rise to a cause of action for breach.[1] For these

1. There is a wealth of discussion in the literature concerning pre-contractual agreements and the difficulty inherent in determining, temporally, when the parties consider themselves to be bound. *See, e.g.,*

reasons, I view the result in this case less as a close application of the law associated with pre-contractual agreements and more as a movement away from the approach to restrictive covenants reflected in *George W. Kistler, Inc. v. O'Brien*, 464 Pa. 475, 347 A.2d 311 (1975)

## CONCURRING OPINION

Justice TODD.

I agree with the majority that the Superior Court erred in finding the restrictive covenant at issue in this appeal to be unenforceable. Unlike the majority, however, I believe that a valid employment contract was reached when Appellee Peter Notaro accepted the formal offer made by Appellant Pulse Technologies, Inc. in its "letter agreement" of July 25, 2005. Yet, because the signing of a more detailed employment agreement which contained a restrictive covenant was incident to Notaro taking employment, I find such covenant to be enforceable.

In this Commonwealth, a valid employment agreement is reached upon the satisfaction of certain requirements. Generally, in order for a contract to be formed, there must be an offer, acceptance, and consideration. *Muhammad v. Strassburger, McKenna, Messer, Shilobod and Gutnick*, 526 Pa. 541, 547, 587 A.2d 1346, 1349 (1991). In the employment context, the contract must demonstrate a mutual intent to employ and be employed. *George W. Kistler, Inc. v. O'Brien*, 464 Pa. 475, 484–85, 347 A.2d 311, 315 (1975). Although all terms need not be expressed with exactness, to be enforceable, the agreement must be sufficiently definite. The agreement to begin working for an employer and an agreement on fundamental aspects of the employment relationship such as wages, duties, and benefits have been found to be sufficient to form an employment contract. *Kistler*, 464 Pa. at 484, 347 A.2d at 316. Indeed, parties may bind themselves prior to the execution of a written document through mutual manifestations of assent,

1 WILLISTON ON CONTRACTS § 4:11 (4th ed. 2012); Browning Jeffries, *Preliminary Negotiations or Binding Obligations? A Framework for Determining the Intent of the Parties*, 48 GONZ. L. REV. 1 (2012–2013).

even where a later formal document is contemplated. *Id.;* *Krause v. Great Lakes Holdings, Inc.,* 387 Pa.Super. 56, 563 A.2d 1182, 1185 (1989).

Here, not only was there a "formal offer" and acceptance, made through a "letter agreement," but substantial aspects of the employment relationship were set forth in Pulse Technologies' July 25, 2005 letter agreement:

- The letter "formally offer[ed] ... a position at Pulse Technologies, Inc." to Notaro;
- The letter, by its terms, is defined as an agreement, as the offer was made "on the terms and conditions contained in this letter agreement (this "Agreement");"
- The letter agreement set forth an "Effective Date:" i.e., the date Notaro's employment would commence—August 15, 2005;
- There were prior discussions regarding Notaro's intended role—"In the discussions you've had with the Company ...;"
- The Agreement contained specific terms and conditions regarding Notaro's employment, including: job description, location, base salary, number of days of vacation, working days and hours, expectation of overtime, benefits, including medical and dental insurance, 401(k) plan, and long term disability coverage;
- The Agreement did not offer employment for a specific period of time, but specified the length of the agreement, noting the either party "may terminate the employment relationship at any time and for any reason without prior notice;"
- It was requested that if "the foregoing is acceptable to you, please sign below." At the end of the Agreement was the notation "Agreed to this —— day of ——" and a signature line. Notaro signed the "letter agreement" on July 26, 2005.

Pulse Technologies' July 25, 2005 letter agreement at pages 1–3.

Based upon the above, in my view, rather than mere negotiations, the requirements for a valid employment contract between the parties were satisfied upon Notaro's signing his acceptance of Pulse Technologies' "formal offer" through what is described, by its own terms, as a "letter agreement," or "Agreement," containing significant terms and conditions of employment. This conclusion, however, does not end the inquiry of whether the restrictive covenant in the subsequent employment agreement should be enforced.

While in my mind an agreement regarding employment was reached, I also find that the letter agreement contained certain contingencies which were a prerequisite to commencing employment. Specifically, Notaro had to satisfactorily complete a background check and a medical exam including tests for alcohol and drug dependency. Additionally, Notaro was required to complete and comply with federal employment eligibility forms. Further, the letter agreement mandated that Notaro sign "our employment/confidentiality agreement," and that "[w]e will not be able to employ you if you fail to do so." Finally, "the first day of employment you will be required to sign an Employment Agreement with definitive terms and conditions outlining the offer terms and conditions contained herein." (Pulse Technologies' July 25, 2005 letter agreement at page 3.) It is the restrictive covenant contained in this contingent employment agreement upon which this appeal centers.

Restrictive covenants are not favored in Pennsylvania, but have long been held to be enforceable if: (1) they are incident to an employment relationship between the parties; (2) they are supported by adequate consideration; (3) the restrictions imposed by the covenant are reasonably necessary for the protection of legitimate interests of the employer; and (4) the restrictions imposed are reasonably limited in duration and geographic extent. *Hess v. Gebhard & Co.*, 570 Pa. 148, 157, 808 A.2d 912, 917 (2002); *Piercing Pagoda, Inc. v. Hoffner*, 465 Pa. 500, 507, 351 A.2d 207, 210 (1976). Important for purposes of this appeal, a restrictive covenant need not appear in an initial employment contract to be valid; rather, it has

been long held that, if a restrictive covenant "is an auxiliary part of the taking of employment and not a later attempt to impose additional restrictions on an unsuspecting employee, a contract of employment containing such a covenant is supported by valuable consideration and is thereby enforceable." *Modern Laundry & Dry Cleaning Co. v. Farrer*, 370 Pa.Super. 288, 536 A.2d 409, 411 (1988) (citing *Beneficial Fin. Co. of Lebanon v. Becker*, 422 Pa. 531, 536, 222 A.2d 873, 876 (1966)); *see also Jacobson & Co. v. Int'l Env't Corp.*, 427 Pa. 439, 449, 235 A.2d 612, 618 (1967) (where covenant is incident to taking of employment, valid consideration is found in the form of the employment itself). Conversely, if the restrictive covenant is entered into after the commencement of employment, without a corresponding change in status, additional consideration must be provided, as continued employment will not sustain the enforcement of the restrictive covenant. *Jacobson.* Thus, even mid-employment restrictive covenants are enforceable in certain situations.

Pennsylvania courts have struggled with the difficult question of when to enforce restrictive covenants, the task made more onerous not only due to competing concerns—protection of an employer's investments and business interests and an employee's right to pursue his or her livelihood—but also the various circumstances in which the enforceability question arises. Specifically, almost a half century ago, in *Beneficial Fin.*, an employee was asked to sign a contract of employment two days after commencing work, which was only accepted by the corporation at headquarters nine days later. The employee argued that the contract, which contained restrictive covenants, was not incident to his taking of employment, and, thus, lacked consideration. Our Court disagreed, finding that not only did all employees for the employer sign such an employment contact upon taking employment, but that the field supervisor approved the contract on the same day the employee started employment. We explained, "[i]t would be a far too narrow construction of 'ancillary' if we held that a contract of employment was not auxiliary to the taking of employment when the contract was prepared the day the employee com-

menced work, signed by the employee two days later, and accepted by the out-of-state parent corporation nine days after that." 422 Pa. at 536, 222 A.2d at 876.[1] Our Court stressed that, as long as the covenants were incident to the taking of regular employment, and not "an after-thought to impose additional restrictions on the unsuspecting employee," the contract containing the covenants was supported by valid consideration. *Id.*

One year later, our Court sharpened the point when it explained that covenants incident to an employment contract are valid, but that where the only purpose of the parties in making an independent contract was to agree to a restrictive covenant, such agreement was unenforceable. *Jacobson,* 427 Pa. at 448, 235 A.2d at 617–18. The *Jacobson* Court rejected the notion that a restrictive covenant needs to be executed simultaneously with the *initial* taking of employment with the company, as, in that case, there was a change in employment position when the covenant was agreed to, distinguishing the situation in which an individual had commenced working, and months later was required to execute an identical contract, but containing a restrictive covenant. 427 Pa. at 449, 235 A.2d at 618; *see also Capital Bakers, Inc. v. Townsend,* 426 Pa. 188, 231 A.2d 292 (1967) (holding covenant in an employment agreement executed some 12 years after the initial taking of employment was not incident to the taking of employment); *Markson Bros. v. Redick,* 164 Pa.Super. 499, 66 A.2d 218 (1949) (refusing to enforce a restrictive covenant that had been signed by a sales manager after employee worked at the store for several months).

A decade later, in *Kistler,* our Court refused to enforce a restrictive covenant contained in a written agreement present-

1. While in the past, our Court has used the phrase "ancillary to," "auxiliary to," and "related to" to describe this principle, most recently we referred to the concept as "incident to" the taking of employment. *Hess, supra.* I believe our more recent verbiage is an improvement and more accurately captures the idea of when a restrictive covenant will be deemed to be valid. Thus, I use the term "incident to" to describe the relationship between a restrictive covenant and the taking of employment.

ed to the employee on his first day of work after finding an oral agreement had been reached two weeks earlier regarding all aspects of future employment. In coming to its conclusion, the Court emphasized that the employee did not understand that he was not to become a regular employee until he signed the restrictive covenant. 464 Pa. at 484, 347 A.2d at 316. Thus, as all aspects of the employment relationship were agreed to prior to the employee's first day of work, the restrictive covenant presented to the employee on his first day of work was not supported by consideration. *Id.*

In sum, the cases in which our courts have addressed the issue of the validity of a restrictive covenant turn upon questions of the relationship between the restrictive covenant and the employment relationship, i.e., whether the restriction is incident to taking employment, including considerations of the timing of the imposition of the limitation, and, to a certain degree, concepts of fairness.

Applying these principles to this appeal, I find that the restrictive covenant contained in the employment agreement was incident to Notaro taking employment, and that it is fair to enforce the covenant against him in these circumstances. Here, through the letter agreement, the parties entered into a binding employment contract with certain contingencies. One of the contingencies was that Notaro sign an employment agreement prior to his commencing work. The letter agreement suggested greater formality and specificity with respect to the subsequent employment agreement, i.e., "definitive terms and conditions outlining the offer terms and conditions contained herein." [2] Additionally, while advancing broad notions of confidentiality, as well as limits on the disclosure of proprietary and confidential information, the letter agreement, however, made no specific reference to the restrictive covenant regarding noncompetition and nonsolicitation. Yet, Notaro knew of his obligation to sign a more formal agreement in

2. I agree with the majority that the July 25, 2005 letter agreement, by its terms, did not strictly limit the terms and conditions of the subsequent employment agreement to the specific items contained in the letter agreement, but envisioned a more formal and definitive written employment agreement.

advance of his starting work, and knew that he could not begin to work if he failed to do so. This requirement was not independent of the initial letter agreement, and the employment agreement did not solely concern the restrictive covenant, but, rather, the restrictive covenant was a contingency set forth in the initial employment contract mandated before the commencement of employment.

Importantly, with respect to timing, the employment agreement containing the restrictive covenant was signed by Notaro on his first day of work, prior to his commencing work. Thus, this was not a situation in which Notaro already had began his employment, and only at some significantly later time was approached by Pulse Technologies and confronted with the prospect of agreeing to a restrictive covenant or losing his employment. Based upon the above, I would find that the restrictive covenant in this appeal was incident to Notaro taking employment.

With respect to related question of fairness, I cannot find that Pulse Technologies was "later attempt[ing] to impose additional restrictions on an unsuspecting employee." *Modern Laundry, supra* at 411. Notaro was an experienced Swiss Screw engineer, who had a special expertise in operating metalworking machines for the manufacture of high-precision components in a highly competitive industry, and who accepted the position at Pulse Technologies as a Senior Manufacturing Engineer. Notaro was on notice that he would have to sign an employment agreement, or he would not be able to commence work. Moreover, when faced with the contingency of signing an employment agreement, the trial testimony establishes that Notaro did not refuse to sign the employment agreement, did not ask for more time to review the document, and did not ask for the opportunity to contact an attorney. N.T., 4/22/2010, at 119–20. Indeed, Notaro testified that he had previously signed a restrictive covenant with an employer prior to commencing work with Pulse Technologies, and, thus, had at least some familiarity with such limitations on his future employment. N.T., 4/22/2010, at 103–04. Based upon the foregoing, Notaro was not an "unsuspecting employee" on

which Pulse Technologies attempted to belatedly impose restrictions on his employment, but was a sophisticated employee who had previous experience with restrictive covenants, who knew of a contingency to enter into a more formal employment agreement, who had time to review that agreement and discuss it with others, and chose to sign his acceptance, all prior to his commencing work for Pulse Technologies.

Although initially appearing similar to our decision in *Kistler*, the facts present in this appeal do not fit comfortably within our existing case law. The significant distinction between the matter before us and *Kistler* is that there was no contingency in the initial employment contract in *Kistler* to enter into any type of subsequent formal agreement. Here, Notaro was on notice at the time he signed the letter agreement that he would be required to sign a more definitive employment agreement prior to commencing employment. Unlike *Kistler*, the letter agreement *sub judice* simply did not resolve *all* material terms of Mr. Notaro's employment, but contained contingencies that were required prior to the commencement of work.

In sum, unlike the majority, I would find a valid employment agreement was reached when Notaro accepted the formal offer made by Pulse Technologies in its "letter agreement" of July 25, 2005. However, I would also conclude that the letter agreement contained a contingency to enter into a more formal employment agreement, and, while that employment agreement contained a restrictive covenant, such covenant was enforceable against Notaro, as it was incident to Notaro taking employment with Pulse Technologies.