J-A18041-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PITTSBURGH LOGISTICS SYSTEMS, INC., | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 135 WDA 2017 |
| MICHAEL CERAVOLO, AN ADULT INDIVIDUAL, MARY COLEMAN, AN ADULT INDIVIDUAL, NATALIE HENNINGS, AN ADULT INDIVIDUAL, AND RACQUEL PAKUTZ, AN INDIVIDUAL | : | |

Appeal from the Order Entered December 22, 2016
In the Court of Common Pleas of Beaver County
Civil Division at No(s):  No. 11542-2016

BEFORE:   BOWES, LAZARUS and OTT, JJ.

MEMORANDUM BY OTT, J.:                **FILED NOVEMBER 14, 2017**

Pittsburgh Logistics Systems, Inc., (PLS) appeals from the order entered on December 22, 2016, in the Court of Common Pleas of Beaver County, denying PLS's petition for preliminary injunction, that sought to uphold non-competition agreements in the employment contracts of defendants Michael Ceravolo, Natalie Hennings, and Racquelle Pakutz.[1]  In this timely appeal, PLS claims the trial court erred in, 1) finding the non-competition agreements were overbroad, and 2) in failing to "blue line" the

_____

[1] Pittsburgh Logistics is not appealing from the order as applied to defendant Mary Coleman.

agreements to make them enforceable. After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.

Our standard of review for an order granting or denying a preliminary injunction is as follows:

> We have emphasized that our review of a trial court's order granting or denying preliminary injunctive relief is "highly deferential". *Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount Inc.*, 573 Pa. 637, 828 A.2d 995, 1000 (2003). This "highly deferential" standard of review states that in reviewing the grant or denial of a preliminary injunction, an appellate court is directed to "examine the record to determine if there were any apparently reasonable grounds for the action of the court below." *Id.* We will find that a trial court had "apparently reasonable grounds" for its denial of injunctive relief where the trial court has properly found "that any one of the following 'essential prerequisites' for a preliminary injunction is not satisfied." *Id.* at 1002.
>
> There are six "essential prerequisites" that a party must establish prior to obtaining preliminary injunctive relief. The party must show: 1) "that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages"; 2) "that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings"; 3) "that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct"; 4) "that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits"; 5) "that the injunction it seeks is reasonably suited to abate the offending activity"; and, 6) "that a preliminary injunction will not adversely affect the public interest." *Id.* at 1002. The burden is on the party who requested preliminary injunctive relief[.]

*Warehime v. Warehime*, 860 A.2d 41, 46-47 (Pa. Super. 2004) (footnotes omitted).

- 2 -

Ceravolo, Hennings and Pakutz all worked for PLS, a logistics firm working with the trucking industry. Because of the proprietary information used by PLS to provide service for its clients, PLS requires its employees to sign employment agreements that include a non-competition clause. Hennings and Pakutz both signed a similar agreement. Ceravolo, on the other hand, had worked for PLS for a longer time and had signed an earlier, less restrictive version. While PLS had Ceravolo also sign the later version, the trial court disallowed that agreement as being unsupported by consideration.

In relevant part, the agreement signed by Hennings and Pakutz states:

7. Non-Solicitation. I agree not to directly or indirectly solicit, for the purpose of offering or attempting to offer any service, product or other application which is the same or similar to the services, products or other applications offered by the Company or in the process of being developed by the Company within the last year prior to termination of my employment with the Company, any of the Company's customers for a period of two (2) years after termination of my employment with the Company. I further agree, for a period of two (2) years after the termination of my employment with the Company, that I will not directly or indirectly hire or directly or indirectly solicit or attempt to solicit any employee of, or consultant to, the Company at anytime within the six month period immediately preceding the termination of my employment, to leave the employ of, or no longer render service to or for the benefit of, the Company.

8. Non-Competition. During the term of my employment with the Company and for a period of one (1) year thereafter, I shall not become an officer or director of, or consultant to or be employed by, or otherwise render services to or on behalf of, a

Competing Business. …[2] I acknowledge and agree that the Company is engaged in business throughout the world and that the marketplace for the Company's products and services is worldwide, and thus, the geographic area, length and scope of this noncompetition provision are reasonable and necessary to protect the legitimate business interests of the Company. In the event that a court of competent jurisdiction shall determine that one or more of the provisions of Paragraphs 7 or 8 are so broad as to be unenforceable, then such provision shall be deemed to be reduced in scope or length, as the case may be, to the extent required to make such Paragraphs enforceable. If I violate the provisions of Paragraph 7 or 8 of this Agreement, I acknowledge that the periods described therein shall be extended by the number of days which equals the aggregate of all days during which any such violations occurred. I acknowledge that this provision does not prevent me from earning a livelihood after the termination of my employment.

Hearing Exhibits C and D.

The original Agreement signed by Ceravolo is similar to the above agreement in all relevant aspects except for the length of the non-solicitation provisions of paragraph 7. Ceravolo is subject to a one-year non-solicitation restriction rather than a two-year restriction. **See** Hearing Exhibit E.

Defendants Ceravolo, Hennings, and Pakutz all left PLS's employ and went to work for BeeMac Trucking (BeeMac), a "competing business."[3]

---

[2] This omitted section defines "Competing Business." This definition is not relevant to the arguments of the parties nor to our disposition of this matter. As this definition is somewhat lengthy, we have omitted it for ease of reading.

[3] Ceravolo asserts he works for, and possesses an ownership share of, a sales and marketing company called "Hybrid." **See** Appellees' Brief at 12. Although in the brief Ceravolo denies Hybrid is a broker or coordinator for

*(Footnote Continued Next Page)*

- 4 -

In seeking the preliminary injunction, PLS sought to enforce paragraphs 7 and 8 as written, thereby preventing the three former employees from working for BeeMac. The current state of the law regarding the enforceability of restrictive covenants in employment contracts is as follows:

> While generally disfavored, Pennsylvania law, however, has recognized the validity and enforceability of covenants not to compete in an employment agreement, assuming adherence to certain requirements. **See Pulse Technologies, Inc. v. Notaro**, 620 Pa. 322, 67 A.3d 778 (2013); **Morgan's** [**Home Equip. Corp. v. Martucci**, 390 Pa. 618], 136 A.2d [838] at 844; **see generally** Kurt H. Decker, *Refining Pennsylvania's Standard for Invalidating a Non-Competition Restrictive Covenant When an Employee's Termination is Unrelated to the Employer's Proctectible Business Interest*, 104 Dick. L.Rev. 619 (2000). Our Court noted in **Morgan's** the evolution of the treatment of restrictive covenants. Such covenants were first found to be absolutely void as against public policy due to a high societal demand for, but low supply of, skilled workers. Later, due to the reality of the new era brought on by the industrial revolution, a more balanced approach was taken by the courts which accepted partial restraints on trade, provided they were ancillary to the employment relationship and reasonably limited:
>
> > Such general covenants not to compete present centuries old legal problems. The earliest cases were decided against the economic background of a chronic shortage of skilled workers in England, the result of the virulent epidemics of the Black Death during the fourteenth century. It was not surprising, then, that all covenants to

*(Footnote Continued)* ────────

BeeMac or any other trucking company, neither Ceravolo nor the trial court ruled that non-competition clause was unenforceable because Hybrid was not a "competing business." For purposes of this decision, we will accept that Ceravolo works either directly for BeeMac or for Hybrid as an agent of BeeMac, because the trial court made no specific finding regarding Hybrid.

- 5 -

refrain from practicing a trade were held to be void as against public policy. This policy carried over into the early seventeenth century when the grants of exclusive trading privileges by the Sovereign caused widespread public indignation which broadened into a dislike for all restraints upon the free exercise of trade. However, by the eighteenth century England found itself in the midst of a new commonercial [sic] era, and adjusting to changed economic conditions, the courts upheld at common law contracts in partial restraint of trade provided they were ancillary to a principal transaction, and were reasonably limited both in geographical extent and duration of time.

*Morgan's*, 136 A.2d at 844; *see also* **Hess** [**Gebhard & Co. Inc.**, 570 Pa. 148] 808 A.2d [912] at 917-18.

Consistent with this legal background, currently in Pennsylvania, restrictive covenants are enforceable only if they are: (1) ancillary to an employment relationship between an employee and an employer; (2) supported by adequate consideration; (3) the restrictions are reasonably limited in duration and geographic extent; and (4) the restrictions are designed to protect the legitimate interests of the employer. **Hess**, 808 A.2d at 917; **Piercing Pagoda, Inc. v. Hoffner**, 465 Pa. 500, 351 A.2d 207, 210 (1976); **Morgan's**, 136 A.2d at 844-46.

**Socko v. Mid-Atlantic Systems of CPA, Inc.**, 126 A.3d 1266, 1274 (Pa. 2015).

Following a three day hearing[4] on the merits of the preliminary injunction, the trial court found that the non-competition clause, which forbade Ceravolo, Hennings, and Pakutz from working for a competing business world-wide, was geographically overbroad and accordingly unenforceable. Further, the trial court reasoned PLS knew the covenant was

_____

[4] 12/8-9/16 and 12/13/2016.

overbroad when it required the employees to sign it, this fact demonstrated PLS had unclean hands and therefore the trial court refused to provide PLS the equitable relief of modifying the contract.

Specifically, the trial court stated:

The agreement provides that "the Company is engaged in business throughout the world and that the marketplace for the Company's products and services is worldwide, and thus, the geographical area, length and scope of this noncompetition provision are reasonable and necessary to protect the legitimate business interests of the Company." (Exhibit F). It further provides that if the court finds this provision to be too broad, that it shall be deemed to be reduced in scope or length to the extent required to make the paragraph enforceable. PLS argues this extensive coverage of the non-compete clause is necessary because the nature of its business is worldwide. PLS has cited no authority supporting the enforcement of a world-wide non-competition agreement. We have found no Pennsylvania case that upheld a worldwide non-competition clause. In fact, we found the opposite.

The enforceability of a world-wide non-compete clause was recently addressed in ***Adhesives Research Inc. v. Newsom***, 2015 WL 1638557 (M.D. Pa. 2015). The court observed that "the geographic scope of a non-compete agreement is reasonably limited if it encompasses only such territory 'as may be reasonably necessary for the protection of the employer without imposing undue hardship on the employee.'" ***Id***. at *6, (quoting ***Jacobson & Co. v. International Environ. Corp.***, 235 A.2d 612, 620 (Pa. 1967). This test is satisfied if the geographic restriction, even if broad in extent, is "roughly consonant with the scope of the employee's duties." ***Victaulic Co. v. Tieman***, 499 F. 3d 227, 237 (3rd. Cir. 2007). For example, in the context sales representatives, the Supreme Court of Pennsylvania has held that in order for a non-compete agreement to be reasonably limited, the geographic restriction can extend no farther than the employee's sales territory and customer base. ***Boldt Mach. & Tools. Inc. v. Wallace***, 366 A.2d 902, 909 (Pa 1976).

In **Adhesives**, the court noted that despite the defendant's sale's territory consisting of the western half of the United States, the geographic restriction contained in the non-compete agreement extends to anywhere in the world where the plaintiff's products are sold. Because the breadth of the restriction was much larger than the defendant's sales territory, the restriction was not "roughly consonant" with the defendant's duties. **Id.** at *6. Therefore, the court found that the geographic scope was not limited to an area reasonably necessary to protect the plaintiff's interests. **Id. See also Boldt**, 366 A.2d at 909. Moreover, by prohibiting the defendant from engaging in her profession anywhere in the world where plaintiff's products are sold, the restriction imposed a severe hardship on defendant. **Id.** Accordingly, the **Adhesives** court found that the geographic extent of the agreement was unreasonably broad. **Id.**

The court's finding of an overly broad geographic scope did not end its inquiry. Under Pennsylvania law, courts may exercise their equitable power to narrow an overly broad restriction. **Sidco Paper Co. v. Aaron**, 351 A.2d 250, 254 (Pa. 1976). In fact, the **Adhesives** court found that if it exercised that power and tailored the geographic scope to a reasonable territory, the plaintiff might have prevailed on the merits. **Id.** at *7. However, the court believed that the case fell within the one exception when the use of equitable powers to modify a restrictive covenant is **not** permitted.

"When a covenant not to compete contains an unlimited geographic scope, although the nature of the business was such that a relevant geographical area could have been specified, the agreement is void, and courts may not use their equitable power to alter the agreement." **Reading Aviation Serv., Inc. v. Bertolet**, 311 A.2d 628 (Pa. 1973) (finding that the non-competition agreement, which bound the employee not to compete with the employer in the general aviation business without any limitation as to time or area, was void on its face as being in unreasonable restraint of trade, and was therefore unenforceable, either in whole or in part). The Supreme Court of Pennsylvania has instructed that such overbreadth "militates against enforcement because it indicates an intent to oppress the employee and/or to foster a monopoly, either of which is an illegitimate purpose. An employer who extracts a covenant in furtherance of such purpose comes to the court ... with unclean

hands and is ... not entitled to equitable enforcement. ..." **Adhesives**, at\* 6. *(citing **Sidco**, 351, A.2d at 257).*

At the time the parties entered into the contract, Adhesives Research Inc. knew that the defendant's sales territory would consist of the western half of the United States. Despite this knowledge, the restrictions in the non-compete agreement were unlimited in **geographic** scope-they extend to the entire **world**. Therefore, the court concluded that the **non-compete** agreement provision was void under Pennsylvania law and not subject to equitable tailoring. ***Accord Fres-Co Sys. USA Inc. v. Bodell***, 2005 WL 3071755 at \*8 (E.D. Pa. 2005). Because the geographic extent was unreasonably broad and not susceptible to equitable modification, the **Adhesives** court found that the plaintiff was not likely to prevail under Pennsylvania law and denied the request for injunctive relief.

Courts in other jurisdictions have likewise refused to modify world-wide noncompetition agreements, finding such agreements void on their face. *See **Hay Group Inc. v. Bassick**,* 2005 WL 2420415 (N.D. Ill. 2005); ***Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp***, LLC, 813 F. Supp. 2d 489 (S.D.N.Y. 2011). Our research revealed that only courts in Michigan and Louisiana were willing to enforce world-wide non-compete clauses. ***Superior Consulting Co, Inc, v. Walling***, 831 F. Supp. 830 (E.D. Mich 1994); ***Kadant Josnson, Inc. v. D'Amico***, 2012 WL 1605458 (E.D. La. 2012).

Defendant Ceravolo argues that PLS's non-compete clause is "overreaching" with respect to the restrictive covenants and this invalidates his employment agreement. He maintains that the agreement's restrictive covenants are so broad and restrictive that they reflect "an intent to oppress the employee [or] to foster a monopoly, either of which is an illegitimate purpose." ***Sidco Paper Co. v. Aaron***, 351 A.2d 250, 254 (Pa. 1976). We agree.

The testimony indicated that the scope of PLS's work in the Energy Sector, where Mr. Ceravolo worked, was mostly national, or, at best, included Canada and Mexico. Trucking routes between Chicago and Philadelphia were discussed, as were routes in Texas. There was also testimony that PLS has an office in Jacksonville, Florida. Exhibits T and U indicate shipments to throughout the United States, with one shipment in Ontario,

Canada. A map produced by PLS for its Energy Services, Exhibit B, showed PLS had a shipment network that stretched throughout the United States, Canada and Mexico. No testimony indicated that Mr. Ceravolo did freight brokering or transportation logistics on an international level (aside from his attendance at a convention in Calgary, Canada), such that a non-competition clause of world-wide magnitude would be necessary to protect the interests of PLS.

We agree with the analysis in **_Adhesives_**, and similarly find that this case falls within the one exception when the use of equitable powers to modify a restrictive covenant is **not** permitted. We decline to modify the non-competition clause to a different geographic area. We believe PLS is not likely to succeed on the merits of the case with respect to the non-competition agreement, and for this reason, we will vacate the injunction prohibiting Mr. Ceravolo from working for BeeMac Trucking or Hybrid Global Logistics.

Trial Court Opinion, 12/22/2106, at 4-9 (emphasis in original).

Although this quote from the trial court opinion is specifically directed to Ceravolo's contract, the trial court applied the same logic to both Hennings and Pakutz. The trial court found no evidence that either Hennings' or Pakutz's employment with PLS encompassed worldwide responsibilities. Therefore, just as with Ceravolo, the worldwide ban on similar employment was unenforceable and demonstrated an improper intent to oppress the employee.

Our review of the certified record convinces us that the reasoning and application of case law is supported by the factual record. Our task in reviewing this matter, as explained above, is to determine if the trial court's ruling is supported by "apparently reasonable grounds." It is. Accordingly,

we affirm the trial court's order regarding non-competition clauses in the contracts of Ceravolo, Hennings and Pakutz.[5]

PLS's second claim is that the trial court erred in failing to amend the non-competition clause to an enforceable geographic area as contemplated by the employment agreements. *See* Paragraph 8, Exhibits C, D, and E. Essentially, PLS argues the trial court should have simply shrunk the geographic limitation found in the employment agreement to fit the instant circumstance.

> [T]he scope of the Appellees' non-competition covenants are self-narrowing. To the extent that the court finds that the scope is too broad, the contractual language itself requires it to be deemed narrowed to the extent necessary for it to be enforced.

PLS Brief at 34-35.

PLS has argued that no matter the worldwide geographic scope found in the employment contract, because PLS operates in a worldwide fashion, the actual scope will self-limit to whatever size is legally needed to prevent the employee from gaining employment. PLS asserts that this self-limiting feature is easily enforced in the instant matter as BeeMac operates within miles of PLS.

---

[5] The trial court's order also upheld the restrictive covenant regarding non-solicitation. That aspect of the order has not been appealed. Ceravolo's contract contained a one-year non-solicitation restriction; Hennings' and Pakutz's contracts contained two-year non-solicitation restrictions. Therefore, those restrictions against contacting PLS clients remain in place and are enforcable.

Nevertheless, the trial court determined that such amendment was improper and unavailable to PLS given the nature of the geographic limitation. The trial court reasoned, as quoted above, pursuant to **Adhesives Research Inc. v. Newson**, 2015 WL 1638557 (M.D. Pa. 2015),[6] **Reading Aviation Serv., Inc. v. Bertolet**, 311 A.2d 628 (Pa. 1973), and **Sidco Paper Co. v. Aaron**, 351 A.2d 250 (Pa. 1976), that the worldwide scope of the covenant, where the relevant geographic could have been originally specified, was gratuitously overbroad and as such militated against enforcement because that indicates an intent to oppress the employee or to foster a monopoly. **See** Trial Court Opinion at 9. Either of these intents are improper and so the employer who imposed such a restriction has unclean hands and is not entitled to the equitable amendment of the agreement.

We agree with this assessment. Not only was the original worldwide scope of the covenant facially overbroad, but if we accept PLS's interpretation, the self-limiting clause essentially renders the limitation unchallengeable. As related above, Paragraph 8 of the Contract contains mandatory language that if a court determines any provision to be

_____

[6] The trial court recognized the Federal Rules of Appellate Procedure allow for the unrestricted use of unpublished decisions, and therefore accepted **Adhesives Research** as persuasive authority. Given that **Adhesives Research** relies heavily on **Sidco** and **Reading Aviation**, two Pennsylvania Supreme Court cases the trial court also cited, we also recognize **Adhesives Research** as merely persuasive.

overbroad then the employee agrees that said term "shall be deemed to be reduced in the scope or length, as the case may be, to the extent required to make such Paragraphs enforceable."[7] However, the power to amend a contract in such a manner is equitable, and we know of no authority that mandates a court modify the contract. We find that the mandatory language merely directs the employee to accept the trial court's authority to make such determinations as are necessary and proper regarding the enforceability of such provisions.

In addition to Paragraph 8, we also note that all of the employment agreements contain a "unique nature of agreement" clause that states, in relevant part, "Should any court find any part of this Agreement to be invalid, unenforceable, or overly broad to any extent, the Company and I intend that such court enforce this Agreement in such less broad or other manner as the court finds appropriate." **See** Paragraph 12, Exhibits C, D and E. We believe this clause recognizes the equitable powers of the court to amend the terms of a contract as appropriate which would include the option **not** to enforce, as provided by law. This interpretation of Paragraph 12 supports our interpretation of Paragraph 8 – the power to amend the Contract is equitable and the employee agrees that a court has the power to amend the Contract as it deems proper. Here, as demonstrated above, the

---

[7] Exhibits C, D, and E, Paragraphs 8.

trial court found the offending clause to be indicative of an improper motive to oppress its employees. The trial court determined the proper manner of enforcing such an oppressive contractual term was to render it void.

In light of the foregoing, we find the trial court has provided apparently reasonable grounds determining that Ceravolo, Hennings and Pakutz will prevail on the merits. Therefore, we affirm the order of December 22, 2016.

Order affirmed.


Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/14/2017