J-A26002-25          2026 PA Super 59

| | | |
|---|---|---|
| ADAM LASCOLI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THOMAS A. FAHR MASONRY | : | No. 437 WDA 2025 |
| CONTRACTORS, A PENNSYLVANIA | : | |
| GENERAL PARTNERSHIP; CHRISTINE | : | |
| L. FAHR, AS ADMINISTRATRIX OF | : | |
| THE ESTATE OF THOMAS A. FAHR, | : | |
| DECEASED; AND ROBERT DEYARMIN | : | |

Appeal from the Judgment Entered March 20, 2025
In the Court of Common Pleas of Blair County
Civil Division at No: 2021 GN 2883

BEFORE:  OLSON, J., STABILE, J., and KING, J.

OPINION BY STABILE, J.:          **FILED:  March 25, 2026**

Appellant, Adam Lascoli, appeals from the March 20, 2025, judgment entered in favor of Appellees, Thomas A. Fahr Masonry Contractors, Christine L. Fahr, as administratrix of the estate of Thomas A. Fahr, and Robert Deyarmin.  We affirm.

Throughout this opinion, we will refer to Thomas A. Fahr in his personal capacity as "Fahr."  We will refer to Thomas A. Fahr Masonry Contractors as the "Partnership," and Fahr's estate as the "Estate."  On April 19, 2007, Appellant signed a one-page employment contract (the "Contract") with the Partnership.  The Partnership agreed to pay Appellant $44,000.00 per year, with annual bonuses of $2,500.00 and annual salary increases of $2,500.00.  Also, Appellant was to receive a 5% share of profits in excess of $471,000.00.

None of these provisions are at issue.[1]  This suit arose out of two provisions

promising Appellant an eventual ownership interest in the Partnership:

EMPLOYMENT AGREEMENT

Employer:  Thomas A. Fahr Masonry Contractors

Employee:  Adam Lascoli

Effective Date:  April 1, 2007

[***]

> Ownership in the amount of 10% will be transferred
> after completing 10 years of service, and an additional
> 1% yearly there after [sic], if employee quits or is
> terminated prior to completing 10 years no ownership
> will be exchanged.
> Upon the death of Thomas Fahr (managing partner),
> Adam Lascoli is to receive Mr. Fahr's 1/3 ownership in
> the partnership, with terms to be discussed.

Third Amended Complaint, Exhibit A, Contract.  The contract was printed on

a single sheet of paper and was signed by both parties.  Fahr's signature line

identified him as the "managing partner."  Appellant worked for the

Partnership from 2007 through 2021 before leaving to start his own company.

He alleges that he never received his promised ownership interest in the

Partnership under either of the two disputed provisions.

---

[1]  Appellant does not concede that the Partnership performed under the Contract provisions not presently at issue, but he chose to pursue litigation only on the terms promising him an ownership interest in the Partnership.  We note that no party has addressed the severability of the provisions before us, which we conclude are unenforceable, from the remainder of the Contract.

Appellant commenced this action by a complaint filed on September 9, 2021. After several rounds of motions practice, and the notice of Fahr's death, Appellant filed his Third Amended Complaint on July 1, 2022. Deyarmin filed an answer, new matter, counterclaim, and crossclaim[2] on July 20, 2022. Fahr and the Partnership answered Appellant's Third Amended Complaint on February 8, 2023. The parties proceeded to a two-day bench trial on October 3, 2024, and November 4, 2024. On December 27, 2024, the trial court entered a verdict in favor of all Appellees. Appellant filed a timely motion for post-trial relief on January 6, 2025. The trial court denied relief by order of March 12, 2025, and the verdict was reduced to judgment on March 20, 2025. This timely appeal followed.

Appellant presents five questions:

1. Did the trial court err and/or abuse its discretion when it held that the [Contract] was invalid and that the language contained therein was indefinite and left to substantial interpretation?

2. Did the trial court err and/or abuse its discretion when it held that the [Contract] lacked consideration from the Appellant?

3. Did the trial court err and/or abuse its discretion when it held that [Fahr] did not have the legal authority to bind the [P]artnership through apparent authority?

_____

[2] The trial court granted summary judgment in favor of Deyarmin on his cross claim against Fahr, by order of June 27, 2024. In essence, the trial court found that Deyarmin never assented to the agreement between Appellant and Fahr. Fahr conceded that he lacked authority to bind the partnership. N.T. Trial, 10/3/2024, at 59. The outcome of the crossclaim is not at issue in this appeal.

4. Did the trial court err and/or abuse its discretion in failing to apply promissory estoppel when the Appellant was induced to leave his prior employment to work for [the Partnership]?

5. Did the trial court err and/or abuse its discretion in determining that the Estate of Thomas A. Fahr did not waive protection under the Deadman's Act when it conducted discovery on the Appellant?

Appellant's Brief at 7-8.

Our standard of review is well established:

We begin with the well-established proposition that the fact-finder is free to believe all, part, or none of the evidence, and to assess the credibility of the witnesses. Questions about inconsistent testimony and motive go to the witnesses' credibility.

The standard of review for an appellate court is an abuse of discretion. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. With respect to the trial court's factual findings on appeal from a bench trial, the appellate court must attribute to them the same force and effect as a jury's verdict. In doing so:

[W]e view the evidence and all reasonable inferences therefrom in the light most favorable to the ... verdict winners. We will only upset those findings if there is insufficient evidence, or if the trial court committed an error of law. In reviewing the findings, the test is not whether we would have reached the conclusion of the trial court, but rather whether we reasonably could have reached the same result. We will not substitute our judgment for that of the trial court.

When the trial court sits as finder of fact, appellate courts defer to the trial court in matters of fact and credibility that are supported by the record and free of legal error.

J-A26002-25

***Berg v. Nationwide Mut. Ins. Co., Inc.***, 235 A.3d 1223, 1228–29 (Pa. 2020).[3]

With his first two arguments, Appellant challenges the trial court's finding that the parties failed to form a binding contract. Formation of a contract requires an offer, acceptance, and consideration. ***Glover v. Junior***, 333 A.3d 323, 339 (Pa. 2025). A contract is valid and binding if the parties have "manifested an intent to be bound by the agreement's terms [and] the terms are sufficiently definite[.]" ***In re Estate of Hall***, 731 A.2d 617, 621 (Pa. Super. 1999), *appeal denied*, 751 A.2d 191 (Pa. 2000). "When the trier of fact has determined the intention of the parties to an agreement, an appellate court will defer to the findings if the evidence supports them." ***Id.***

"An agreement is sufficiently definite if the parties intended to make a contract and there is a reasonably certain basis upon which a court can provide

_____

[3] We are cognizant of Appellees' argument that jurisdiction has lapsed in this case because Appellant failed to file a timely appeal. Deyarmin notes that the trial court entered its verdict on December 27, 2024, and Appellant filed his notice of appeal on April 9, 2025. The Rules of Appellate Procedure require that an appeal be filed within thirty days of the final appealable order. Pa.R.A.P. 903(a). "Under our Appellate Rules, an appeal in a civil case in which post-trial motions are filed lies from the entry of judgment". ***K.H. v. J.R.***, 826 A.2d 863, 871 (Pa. 2003). Instantly, the trial court's verdict was reduced to judgment on March 20, 2025, after it denied Appellant's timely motion for post-trial relief. We are cognizant that Appellant's post-trial motion sought, alternately, a new trial and/or reconsideration. But because the March 20, 2025, judgment is the appealable order in this case, the fact that the trial court did not grant reconsideration within 30 days of entering its verdict is of no moment, and Appellees' argument under Pa.R.A.P. 1701(b)(3) is unavailing. Appellant's April 9, 2025, notice of appeal was timely, and therefore we have jurisdiction to entertain the merits.

- 5 -

an appropriate remedy." ***Greene v. Oliver Realty, Inc.***, 526 A.2d 1192, 1194 (Pa. Super. 1987), *appeal denied*, 536 A.2d 1331 (Pa. 1987). "[T]he paramount goal of contractual interpretation is to ascertain and give effect to the intent of the parties." ***Id.*** "When the language of a written contract is clear and unequivocal, its meaning must be determined by its contents alone. Only if the words used are ambiguous may a court examine the surrounding circumstances to ascertain the intent of the parties." ***Id.*** (citation omitted). In some cases, the parties may perform in a way to make definite what was previously unclear. ***Id.***

Said another way, "[a] court cannot enforce a contract unless it can determine what it is." ***Ingrassia Const. Co. v. Walsh***, 486 A.2d 478, 484 (Pa. Super. 1984). For a court to determine what the contract is, the parties must have arrived at a meeting of the minds on the essential terms. ***Id.*** at 482-83. A meeting of the minds occurs where the parties "mutually assent to the same thing[.]" ***Mountain Prop., Inc. v. Tyler Hill Realty Corp.***, 767 A.2d 1096, 1101 (Pa. Super. 2001), *appeal denied*, 782 A.2d 547 (Pa. 2001). That is, there must be an offer and acceptance of the same terms. The test for discerning a meeting of the minds is an objective one:

> A true and actual meeting of the minds is not necessary to form a contract. 1 S. Williston, Williston on Contracts §§ 66, 94 (3d ed.1957); 1 A. Corbin, Corbin on Contracts § 107 (1963). In ascertaining the intent of the parties to a contract, it is their outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions, that matter.

***Ingrassia***, 486 A.2d at 482-83 (some citation omitted). "If a court is unable, due to indefiniteness or incompleteness in contracting, to determine whether the contract has been performed then it must find that no contract existed in the first place." ***Id.*** at 484.

For guidance on the necessary terms of an employment contract, we turn to ***George W. Kistler, Inc. v. O'Brien***, 347 A.2d 311 (Pa. 1975) (plurality), wherein the plaintiff and defendant entered an oral contract for the defendant's employment. A restrictive covenant was not part of the oral agreement, but was included in a subsequent written agreement. When the defendant left the plaintiff's company, the plaintiff sued to enforce the restrictive covenant. The defendant prevailed in the lower courts, on grounds that no agreement existed prior to the writing. The Supreme Court reversed.

While no restrictive covenant is at issue here, we find instructive the ***Kistler*** Court's reasons for concluding that the parties arrived at a valid, oral employment contract before the defendant was asked to sign the restrictive covenant:

> Not only was it agreed that [the defendant] would cease working for his present employer and begin working for [the plaintiff], **but all aspects of the employment relationship such as wages, duties and benefits were also agreed upon**. [The plaintiff's] testimony admits mutual assent regarding the employment. Moreover, there was no evidence that the parties understood that [the defendant] was not to become a regular employee until he signed the restrictive covenant, and was not to receive any commissions . . . or other confidential information prior to that time.

*Id.* at 315–16 (emphasis added).  Thus, because the defendant's employment contract preexisted the execution of the restrictive covenant, his employment could not supply the consideration for the restrictive covenant.  *Id.* at 314-16.[4]

Our Supreme Court analyzed *Kistler* in *Pulse Techs., Inc. v. Notaro*, 67 A.3d 778, 781 (Pa. 2013).  There, the defendant employee received an offer letter describing the base terms and conditions of his employment. The letter conditioned his employment on his execution of a written employment contract.  The offer letter did not mention a restrictive covenant but the written contract contained one.  The *Pulse Techs.* Court distinguished *Kistler* because the oral contract in *Kistler* contained all elements of an employment contract, whereas the offer letter in *Pulse Techs.* conditioned the defendant's employment on the subsequent execution of a written contract that contained a restrictive covenant.  *Id.* at 782.  Thus, no employment contract existed prior to the defendant's execution of the written employment contract, and the restrictive covenant was enforceable.  *Id.*

> The clear references to future specific terms show the offer letter is not a contract, but only evidence of negotiation.  This Court "has long recognized the principle that documents [ ] having the surface appearance of contracts may be in fact evidence of mere negotiating by parties with a view toward executing a

---

[4]  Two concurring Justices opined that the restrictive covenant was void because it was made independently of the employment contact, not because of a lack of consideration.  *Id.* at 316-17.  This point, rather than the Plurality's analysis of the essential terms of an employment contract, divided the *Kistler* Court.

binding contract in the future. Should this be the case, of course, [such] documents cannot form the basis for recovery."

*Id.* at 781 (quoting *Goldman v. McShain*, 247 A.2d 455, 458 (Pa. 1968)).

We now consider the disputed provisions of the Contract in light of the foregoing principles, beginning with the "10% Provision," which we quote once more:

> ➢ Ownership in the amount of 10% will be transferred after completing 10 years of service, and an additional 1% yearly there after [sic], if employee quits or is terminated prior to completing 10 years no ownership will be exchanged.

Third Amended Complaint, Exhibit A, Contract.

As explained in *Kistler*, an agreement as to wages, duties, and benefits can give rise to a valid employment contract. *Kistler*, 347 A.2d at 315-16. Missing from the 10% Provision, or any other part of the Contract, is any description of Appellant's duties.[5] Moreover, the 10% Provision did not specify whether the promised ownership interest was contingent on Appellant remaining a full-time employee for the first ten years of his employment and beyond. This omission is significant because Appellant was working only part time for the Partnership for parts of each year from 2015-2019, and he left the Partnership's employ in 2020. N.T. Trial, 10/3/24, at 54-56. Appellant did not receive—or request—his promised partnership distribution for 2017,

---

[5]  Appellant testified that his duties were "estimating, project managing, accounts payable, accounts receivable, ordering materials, purchasing materials," and occasional truck driving. N.T. Trial, 10/3/24, at 54.

2018, or 2019. *Id.* at 60. Appellant testified that he did demand the promised ownership interest beginning in 2017 (the year of his ten-year employment anniversary) because it was a matter of ongoing discussion between Appellant and Fahr until 2020, when it became obvious no resolution could be reached. *Id.*

In summary, the language of the 10% Provision, which is a single sentence on a single-page document, fails to address some critical points as to its operation. This problem is compounded by the absence, anywhere in the Contract, of a description of Appellant's duties.

We therefore discern no error in the trial court's finding that the language of the 10% Provision was too indefinite to be enforceable on its own. As noted above, contracts that lack sufficiently definite terms can be made definite by the parties' performance, or in some cases by the imposition of a reasonable term. *Greene*, 526 A.2d at 1194; *Ingrassia*, 486 A.2d at 48. But the parties' performance in this case does not clarify the operation of the 10% Provision. In fact, it does the opposite. Appellant started as a full-time employee of the Partnership but did not remain full time for ten years. Further, Appellant did not demand performance of the Contract upon his ten-year employment anniversary. Rather, Appellant testified that he discussed the matter with Fahr for several years thereafter, with Appellant ultimately

- 10 -

leaving the Partnership in the Spring of 2021.[6]  The parties' course of conduct suggests uncertainty, on both sides, about the operation of the 10% Provision. Thus, neither the language of the 10% Provision, nor the parties' performance thereunder, offers any objective evidence of a meeting of the minds.  As explained above, courts look to the parties' objective manifestations of assent, rather than their subjective expectations, to discern whether a meeting of the minds existed.  *Ingrassia*, 486 A.2d at 482-83.  We discern no error in the trial court's conclusion that the parties' objective manifestations of assent were not sufficient here.

Appellant's reliance on *Stephan v. Waldron Elec. Heating and Cooling, Inc.*, 100 A.3d 660 (Pa. Super. 2014) is misplaced.  He cites *Stephan* for the proposition that, where an essential term is left out of a contract, a court will impose a reasonable term rather than invalidate the contract.  Appellant's Brief at 20, 23.  *Stephan* involved a payment dispute between a homeowner and an electrician.  The electrician included a price term in his contract, and therefore there was no need for the Court to impose a reasonable term in that case.  *Id.* at 669.  *Stephan* is procedurally and factually inapposite.  Moreover, the passage from *Stephan* that Appellant relies on does not support Appellant's case:

> If an essential term is left out of the agreement, the law will not invalidate the contract but will include a reasonable term.  For

_____

[6] Appellant and Deyarmin also discussed the possibility of Appellant's buyout of Deyarmin's interest, but to no avail.  N.T. Trial, 10/3/24, at 43-44.

- 11 -

instance, if the parties do not specify price, a court will impose a reasonable price which will usually be the item's market value. However, if the parties include the term but have expressed their intention ambiguously, the court will not impose a reasonable term and the contract may fail for indefiniteness.

*Id.* at 668. Here, the parties did not leave out the term regarding Appellant's eventual ownership interest. Rather, they included a term but expressed it ambiguously. This is not a contract that can be salvaged by a court-imposed reasonable term.[7]

We now turn to the remaining disputed provision. We refer to it as the "Fahr's Interest" provision, as it granted to Appellant Fahr's ownership interest upon Fahr's death:

> ➢ Upon the death of Thomas Fahr (managing partner), Adam Lascoli is to receive Mr. Fahr's 1/3 ownership in the partnership, **with terms to be discussed.**

Third Amended Complaint, Contract, Exhibit A (emphasis added). As our Supreme Court explained in **Pulse Techs.,** a document referencing future

---

[7] Appellant also argues that the ambiguities in the Contract should be construed against Fahr, as the drafter. Appellant cites a single case, **Sun Co. v. Pennsylvanian Tpk. Comm'n**, 708 A.2d 875, 878-79 (Pa. Commw. 1998) for the proposition that, "under the rule of *contra proferentum*, any ambiguous language in a contract is construed against the drafter and in favor of the other party if the latter's interpretation is reasonable." Appellant's Brief at 21. This argument misses the mark, as it ignores the distinction between contract formation and contract interpretation. *Contra proferentum* is a rule of interpretation. Without mutual assent and a meeting of the minds, there is no contract to interpret. **See Dep't of Transp. v. Pennsylvania Indus. for Blind and Handicapped**, 886 A.2d 706, 713 n.11 (Pa. Commw. 2005) ("A meeting of minds is required in order for an enforceable contract to exist. It is not a principle of law that is invoked when the question is one of contract construction.").

- 12 -

terms is merely evidence of negotiations; it is not a binding contract upon which a court may award a remedy for breach. ***Pulse Techs.***, 67 A.3d at 781. Thus, the "Fahr's Interest" provision does nothing more than evidence negotiations. It references future terms that were never reached. Furthermore, Appellant voluntarily left the employ of the Partnership and formed his own competing company prior to Fahr's death. The Fahr's Interest provision is therefore unenforceable on its face, and nothing in the record supports a conclusion that the parties ever reached an enforceable agreement. We discern no error in the trial court's refusal to enforce this provision.

Next, we consider the parties' competing arguments about Fahr's authority to bind the partnership. As noted briefly above, Deyarmin won summary judgment on his cross claim against the Estate. The Estate conceded, for purposes of the cross claim, that Fahr exceeded his authority under the Partnership agreement in promising to Appellant an ownership interest in the Partnership. In his brief to this Court, Appellant concedes that the trial court was correct in concluding that Fahr exceeded his authority under the Partnership agreement in executing the contract.[8] Appellant's Brief at 30. Instead, Appellant argues that Fahr acted with apparent authority to promise Appellant an ownership interest in the Partnership without the consent of the other partners.

_____

[8] The parties do not address the Partnership agreement in their arguments to this Court.

- 13 -

Appellant cites § 8431 of the Pennsylvanian Uniform Partnership Act ("UPA"), 15 Pa.C.S.A. § 8411, *et. seq.*, which provides:

Subject to the effect of a certificate of partnership authority under section 8433 (relating to certificate of partnership authority), the following rules apply:

(1) Each partner is an agent of the partnership for the purpose of its business. An act of a partner, including the signing of an instrument in the partnership name, for apparently carrying on in the ordinary course the partnership business or business of the kind carried on by the partnership binds the partnership, unless the partner did not have authority to act for the partnership in the particular matter and the person with which the partner was dealing knew or had notice that the partner lacked authority.

(2) An act of a partner which is not apparently for carrying on in the ordinary course the partnership's business or business of the kind carried on by the partnership binds the partnership only if the partner had actual authority to take the action.

15 Pa.C.S.A. § 8431.

Appellant claims Fahr had apparent authority to bind the Partnership to the Contract because hiring of employees falls within the Partnership's ordinary course of business. Appellees do not dispute the unexceptional proposition that the hiring of an employee is within the ordinary course of the Partnership's business. But the question here is whether Fahr had apparent authority to bind the partnership to an employment agreement potentially affecting the ownership interest of each other partner, as the 10% Provision did, or to transfer his own interest without consulting the other partners, as the Fahr's Interest provision did.

- 14 -

Appellant cites no law supporting a conclusion that a transfer of ownership in a partnership falls within the apparent authority of a single partner. He relies instead on *Leach v. Hough*, 507 A.2d 848 (Pa. Super. 1986), in which the plaintiff partnership sued one of its partners and a lawyer hired by the defendant partner, alleging that the lawyer and the defendant partner acted in concert to usurp partnership opportunities. *Id.* at 850. Appellant relies on *Leach* for the proposition that hiring a lawyer was within the defendant partner's authority. Appellant's Brief at 28-29. *Leach* is inapposite because Fahr's authority to hire is not in dispute.

Appellant also cites *In re Estate of Hall*, 535 A.2d 47 (Pa. 1987), which held that the general partner of a limited partnership acted within his authority in hiring a company he owned to manage some partnership properties. The *Hall* Court explained that normal business judgments were within the authority of the general partner, and that the limited partners could not interfere with those decisions. *Id.* at 56. *Hall* does not advance Appellant's argument. *Hall* involved a limited partnership, and nothing in that case supports a conclusion that a transfer of ownership in a general partnership falls within the apparent authority of a single partner who fails to consult the others. Appellant fails to cite any other law to support his argument that Fahr acted within his apparent authority in this case.

While authority on this point is admittedly limited, we observe that the court in *In re Machi Produce, Inc.*, 128 B.R. 134 (Bankr. W.D.Pa. 1991)

held that an individual partners' execution, in his own name, of an installment contract for the sale of land owned by the partnership, was invalid because it exceeded the partners' authority (the partnership was in the business of buying and selling produce, not real estate). Likewise, in **Jamestown Banking Co. v. Conneaut Lake Dock and Dredge Co.**, 14 A.2d 325 (Pa. 1940) our Supreme Court held that a confession of judgment instrument signed by fewer than all of the partners does not bind the remaining partners absent express authority from the remaining parters because the execution of a confession of judgment instrument does not fall within the ordinary course of a partnership's business. We discern no error in the trial court's conclusion that Fahr lacked apparent authority, under § 8431 of the UPA, to bind the Partnership to the 10% Provision and the Farh's Interest provision.

To summarize the foregoing, we conclude that the 10% Provision and the Fahr's Interest provision were not sufficiently definite to be enforceable as written, and we conclude that both were beyond Farh's apparent authority under the UPA.

Next, we consider Appellant's promissory estoppel argument.

> To maintain a promissory estoppel action a claimant must aver the following elements: (1) the promisor made a promise that [it] should have reasonably expected would induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise.

*V-Tech Servs., Inc. v. Street*, 72 A.3d 270, 276 (Pa. Super. 2013). Promissory estoppel is an equitable remedy, invoked to avoid injustice, which makes otherwise unenforceable agreements binding. *Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000).

Appellant argues that the promise of an ownership interest in the Partnership—if he worked there long enough—was what induced him to leave his former employer. And, as things stand, he worked for the Partnership for 14 years but never received his promised share. Appellant argues that Fahr's conduct was actionable under a promissory estoppel theory even if the Contract was unenforceable and/or Fahr had no authority to bind the Partnership to some of the promises he made. Appellant's Brief at 31-33. In his brief, however, Appellant does nothing more than identify the elements of promissory estoppel and assert that they were met. *Id.* Assuming without deciding that the first two elements are met, it is unclear what remedy Appellant seeks. Though he did not receive an ownership interest in the Partnership, he was gainfully employed for fourteen years. And, as we have explained above, Fahr lacked authority under the Partnership agreement and the UPA to bind the Partnership to the disputed provisions. Further, Appellant produced no evidence and offers no argument as to the amount of damages he sustained as a result of Fahr's breach of his promises. For these reasons, Appellant's promissory estoppel argument fails.

Finally, Appellant argues that the trial court erred in refusing to consider evidence of Fahr's statements pursuant to the Dead Man's Act.[9]  The purpose of the Dead Man's Act is to prevent a surviving, adverse party from giving testimony favorable to himself and unfavorable to the decedent which the decedent cannot refute.  **Schroeder v. Jaquiss**, 861 A.2d 885, 889 (Pa. 2004);  42 Pa.C.S.A. § 5930.  Where the decedent, before he dies, or the decedent's estate afterward, requires the adverse party to be deposed or answer interrogatories, the estate cannot object to the adverse party's testimony under the Dead Man's Act.  **Id.**  That is precisely what occurred in this case.  Counsel for the Estate acknowledged that he served interrogatories and requests for the production of documents on Appellant, to which Appellant responded.  N.T. Trial, 10/3/2024, at 12.  In accordance with **Schroeder**, the Estate waived the protection of the Dead Man's Act.

Under the circumstances of this case, however, the trial court's error was harmless.

> The harmless error doctrine underlies every decision to grant or deny a new trial.  A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake.

---

[9]  The parol evidence rule was the subject of much debate at trial, but Appellant does not address that rule in his brief.

***Grove v. Port Auth. of Allegheny Cnty.***, 218 A.3d 877, 888 (2019). After the parties debated the matter at length at the beginning of trial, the trial court took the Dead Man's Act issue under advisement at the beginning of trial. N.T. Trial 10/3/24, at 10-15. The trial court decided to hear the evidence and reserved until the end of trial a ruling on what was admissible. ***Id.*** at 15-16.

Instantly, our conclusion—that the disputed provisions of the Contract were unenforceable—rests on the express contractual language and, to a lesser extent, the undisputed evidence of the parties' performance thereunder. Appellant does not develop an argument as to which portions of the evidence excludable under the Dead Man's Act would have made a difference in the outcome of trial. As such, Appellant has failed to demonstrate that he suffered prejudice from the trial court's erroneous ruling.

Having considered and rejected each of Appellant's arguments, we affirm the trial court's judgment.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 3/25/2026